43235, 43236. WESTERN & ATLANTIC RAILROAD
COMPANY v. DAVIS et al.; and vice versa.

Argued November 7, 1967—Decided December 1, 1967—
Rehearing denied December 14, 1967.

*Mitchell & Mitchell, D. W. Mitchell, Jr.,* for appellants.

*McDonald, Longley, McDonald & McDonald, Ernest McDonald, E. Crawford McDonald, Hazel C. McDonald, Pittman & Kinney, L. Hugh Kemp,* for appellees.

EBERHARDT, Judge. The appeal of Western & Atlantic was originally to the Supreme Court on the grounds that that court had jurisdiction by virtue of a constitutional attack made upon certain city ordinances pleaded and relied upon by plaintiff, an issue which falls within the jurisdiction of this court. *Shipman v. Johnson,* 210 Ga. 174 (78 SE2d 515); *Beard v. City of Atlanta,* 211 Ga. 25 (2) (83 SE2d 594). Consequently the Supreme Court transferred both cases to this court. *Western & Atlantic R. Co. v. Davis,* 223 Ga. 622 (157 SE2d 457). Since the judgments appealed from were entered June 15, 1967, the provisions of the Civil Practice Act have no application. *Aber-*

834

*crombie v. Ledbetter-Johnson Co.*, 116 Ga. App. 376, 378 (157 SE2d 493).

■ ■ Both defendants contend in support of their general demurrers that the allegations of the petition, being construed against the pleader, show that the sole proximate cause of the collision and death of plaintiff's husband was his failure to exercise ordinary care for his own safety. This contention is not meritorious.

We note first of all some confusion on the part of defendants in regard to the physical layout of the scene as alleged in the petition. The petition alleges that decedent was crossing from west to east and that the obstructions caused by defendant's railroad cars on their switch tracks occurred on the southwest side of the crossing so as to block the view, from the standpoint of persons crossing from the west, of trains approaching from the south. Hence arguments of the defendants based upon the assumption that decedent was crossing from east to west, or that the switch tracks upon which the cars were located were on the east side of the crossing, are not well taken.

The chief difficulty with defendants' contention, however, is that it calls upon this court to supply facts not alleged in the petition. We accept as a legal truism that this court may neither supply essential allegations for a deficient petition nor may we supply allegations to render a petition defective. *Ford Motor Co. v. Williams*, 219 Ga. 505 (134 SE2d 32). There is a fundamental difference between a court's construing a petition against a pleader and drawing unfavorable inferences from the facts pleaded on the one hand, and supplying the facts in the first instance, from which the inferences and conclusions of law are sought to be drawn, on the other. What defendants call upon us to do is in essence to supply an allegation of distance between the switch tracks, where decedent's vision was obscured, and the main line track of Western & Atlantic, on which the collision occurred. We are then asked to conclude as a matter of law that this was a "sufficient distance" in which decedent could have looked to the south, observed the approaching train, and applied his brakes before reaching Western & Atlantic's main line track.

This case is here on demurrer, and we must take the allegations of the petition as being true. We can not add facts not alleged. The petition alleges that both defendants placed railroad cars on their respective switch tracks on the southwest side of the crossing which obstructed decedent's view as he approached the crossing from the west so that he could not see trains of either defendant approaching from the south until he was upon the track of the approaching train. This is an allegation of an ultimate fact, and we can not say as a matter of law on demurrer that decedent could have seen the approaching train and stopped short of the main-line track in time to avoid the collision. *Callaway v. Pickard,* 68 Ga. App. 637 (23 SE2d 564); *Reed v. Southern R. Co.,* 37 Ga. App. 550 (4) (140 SE 921). A cursory reading of *Moore v. Seaboard A. L. R. Co.,* 30 Ga. App. 466 (118 SE 471), *Coleman v. Western & A. R.,* 48 Ga. App. 343 (172 SE 577), with the special concurrence, dissent, and supplementary opinion on motion for rehearing, and *Peeples v. Louisville & N. R. Co.,* 37 Ga. App. 87 (139 SE 85), cited by defendants, will reveal that they are of no aid to them on this point under the allegations of this petition.

 Southern further contends in support of its general demurrer that the negligence alleged against it was not the proximate cause of the collision, arguing that the superseding or intervening independent negligent acts of Western & Atlantic must be taken in law as the sole proximate cause. No cases are cited, however, for the proposition that negligence of one defendant in maintaining an obstruction to view can not concur with the negligence of another defendant operating the injury-inflicting vehicle which was obscured from the view of plaintiff.

In *Seaboard A. L. R. v. Blackshear,* 11 Ga. App. 579 (75 SE 902), it was alleged that the defendant railroad was negligent in storing cars upon one of its sidetracks so as to obstruct plaintiff's view and prevent him from seeing an approaching train until he had crossed the sidetrack and was just getting upon the main track when the train was observed a short distance away approaching with great speed. In holding that a general demurrer was properly overruled, the court stated (Headnote 1a): "While a railway company has generally the right to place

and store cars upon its sidetracks, it is a jury question whether the storing of cars upon a particular sidetrack, under stated circumstances, is negligence as related to one whose injury may have been caused *or contributed to* by the improper or untimely placing of such cars." It was further held that an instruction to the jury that " 'where a car is left on a sidetrack, whether that is negligence is a question for the jury, under all the circumstances of the case' " was not error.

This case is clear authority for the proposition that the maintaining of cars on sidetracks so as to obstruct the view of persons entering the crossing may be considered by the jury as a separate act of negligence contributing to the injury although other acts of negligence might be alleged in regard to the speed of the train, failure to signal and to provide flagmen, etc. We do not regard it as material in the case sub judice that the colliding train was under the control of Western & Atlantic, while in *Blackshear* the train appeared to be that of the defendant causing the obstruction to view, particularly, since in this case it is alleged that both railroads maintained view-obscuring cars on their respective switch tracks at the crossing through which both railroads operated their trains without providing for warning devices, thus creating a dangerous situation.

If there could be any question on the "superseding negligence" point, however, it is answered by *Williams v. Grier*, 196 Ga. 327 (26 SE2d 698) and *Reliable Transfer Co. v. May*, 70 Ga. App. 613 (29 SE2d 187). In *Williams v. Grier* plaintiff was injured in a collision between her automobile which was proceeding east on one street and another automobile proceeding north on the intersecting street which was being operated at a very high rate of speed in violation of law. The suit was not against the driver or owner of the speeding automobile, however, but solely against other persons responsible for parking a truck at the intersection in such a manner as to obscure the view of drivers entering the intersection. On appeal to this court it was held that the petition was subject to the demurrer of the defendants obstructing the view at the intersection because there appeared a new and independent cause, intervening between the alleged original wrong and the injury; and the intervening

agency was held to be the direct and proximate cause of the injury, and the negligence in obstructing the view too remote. The Supreme Court reversed, holding that the petition stated a cause of action based either upon negligence in violation of an ordinance or common law negligence; that the negligence of the defendants in obstructing the view was a contributing or concurrent cause; that the defendants should have anticipated or foreseen that some such injury might occur as a result of their negligence; and that this conclusion stood even though it should appear that the operator of the other automobile was violating a criminal statute as to speed. Hence a cause of action was stated against the view-obstructing defendant, even though the driver of the speeding automobile was not joined as a party defendant.

*Reliable Transfer Co. v. May,* supra, also involved an intersection collision, and one of the causes of the collision was alleged to be the negligence of one of the defendants in parking its truck in such a way as partially to obscure the view of drivers entering the intersection. Following *Williams v. Grier,* supra, this court held that a cause of action was set forth on the theory that the negligence of all parties defendant, including the view-obscuring defendant, combined to produce the proximate cause of the injury. See also *Louisville & N. R. Co. v. Ellis,* 54 Ga. App. 783 (189 SE 559).

We must conclude, therefore, that we cannot say as a matter of law on demurrer that the sole proximate cause of the decedent's death was his failure to exercise ordinary care for his own safety or the independent and superseding negligence of Western & Atlantic in the operation of its train. Accordingly there was no error in overruling the general demurrer of Western & Atlantic, but it was error to sustain the general demurrer of Southern.

■ ■ Western & Atlantic contends that the trial court erred in overruling its special demurrers 3, 4, and 5 to Subparagraphs (d) and (f) of Paragraph 24 of the petition. These subparagraphs charge Western & Atlantic with violations of a city ordinance as follows: "It shall be unlawful to operate a train in the city at a greater speed than twenty (20) miles per hour, and a train must be kept under such control as to be capable of being

stopped at any public street crossing in said city." Subparagraph (d) alleges violation of the ordinance in operating the train at a speed of 55 miles per hour; Subparagraph (f) alleges a violation in failing to keep the train under such control as to be capable of stopping the train at the crossing. The demurrers attack the ordinance on the grounds that it is unreasonable and arbitrary, in conflict with the general laws of Georgia, and unconstitutional as depriving demurrant of due process of law. Each of the demurrers is directed to Subparagraphs (d) *and* (f), thus attacking the allegations of negligence regarding ability to stop at each crossing *and* the allegations with reference to exceeding the twenty-mile per hour speed limit. In this court, however, an attack is made only upon the allegation of violation of that portion of the ordinance relating to stopping at crossings, the contention being that this portion is invalid but severable from the other portion; and no argument is directed to Subparagraph (f), it being conceded that "speed limitation is a proper subject of municipal regulation." We must, therefore, by virtue of this abandonment and concession, treat Subparagraph (f) as not being subject to the special demurrers.

"Where a paragraph contains allegations not subject to demurrer on the grounds urged, a special demurrer attacking the paragraph as a whole fails in its office as a critic and should be overruled." *Stephens v. Stephens*, 220 Ga. 22 (5) (136 SE2d 726). "A special demurrer must be perfect; it cannot attack a whole paragraph, or a whole exhibit, of which a part only is subject. *Carusos v. Briarcliff, Inc.*, 76 Ga. App. 346 (45 SE2d 802); *Atlanta Journal Co. v. Doyal*, 82 Ga. App. 319, 325 (60 SE2d 802)." *Kroger Co. v. Perpall*, 105 Ga. App. 682, 684 (125 SE2d 511). "It is elementary that a special demurrer must be perfect in itself, and if any part of it is bad, the entire demurrer is bad." *Hopkins v. West Pub. Co.*, 106 Ga. App. 596, 603 (127 SE2d 849). "Where a special demurrer raises two objections to a portion of a petition one of which is deficient, an appellate court will not consider the other, as the deficient part renders the whole imperfect. . . Where a portion of a special demurrer is erroneous, the whole must fall." *Hughes v. Jackson*, 109 Ga. App. 804 (3, 5) (137 SE2d 487).

There was no error in overruling Western & Atlantic's demurrers 3, 4, and 5.

■ Plaintiff complains of the sustaining of ground 1 of the renewed demurrer, and motion to purge, of Western & Atlantic to a portion of the fourth paragraph of the petition as amended. This paragraph recites that the action was brought by the widow for her own benefit and for the benefit of the three children of plaintiff and decedent, giving names and ages, "as authorized by section 105-1302 of the Code of Georgia, Annotated, subject to Georgia Law of descents as to personal property descending to the widow and children from the deceased, as provided in section 105-1304 of the Code of Georgia, Annotated." The grounds of the demurrer are that the allegations with respect to the children are immaterial, irrelevant, prejudicial and are set out solely for the purpose of obtaining sympathy.

This demurrer was properly sustained. While it is true that under *Code* § 105-1304 the widow holds the amount she recovers subject to the law of descents as if it were personal property descending to the widow and children from the deceased, "[*Code* § 105-1302] gives a right of action to the children only in the event there is no widow. If there be a widow, the right to sue is vested in her and not in the children, or jointly in her and the children. Section 105-1304 appears to be nothing more than a provision stating the purposes for which the widow shall hold the amount she recovers. . . In our opinion the latter section can not be construed, standing alone or in connection with § 105-1302, to vest in the children, jointly with the widow or separately, the right to sue for the recovery of damages for the death of their father so long as the widow survives." *Bloodworth v. Jones,* 191 Ga. 193, 195 (11 SE2d 658). Accord: *Odom v. Atlanta & W. P. R. Co.,* 78 Ga. App. 477 (51 SE2d 466). "In [a wrongful death] action the plaintiff [widow] is not called upon to prove the number of her children and their and her dependency upon the deceased for a support, either in establishing her right to recover or in the assessment of damages. It was therefore error for the court to allow, over timely objection, evidence that the decedent had a family of four children, that the family had no other means of support except by his labor, and

that the decedent provided a comfortable support for them. Such evidence could only have a harmful effect on the defendant, and was improperly allowed." *Central of Ga. R. Co. v. Prior,* 142 Ga. 536, 537 (83 SE 117). Cf. *Macon, Dublin & Savannah R. Co. v. Musgrove,* 145 Ga. 647, 648 (89 SE 767); *Central R. v. Moore,* 61 Ga. 151, 152. See also *Underwood v. Atlanta & W. P. R. Co.,* 105 Ga. App. 340, 350 (2a) (124 SE2d 758). *Walden v. Coleman,* 217 Ga. 599 (124 SE2d 265, 95 ALR2d 579) and *Dunn v. Caylor,* 218 Ga. 256 (127 SE2d 367), cited by plaintiff, are not applicable here.

■ ■ Western & Atlantic contends that the trial court erred in sustaining plaintiff's demurrers Nos. 1 and 8 to portions of Paragraphs 12 and 24, and Exhibit A of its answer. Exhibit A is a deed executed by Louisville & Nashville Railroad Company (lessee of Western & Atlantic) and Western & Atlantic conveying an easement across the tracks to the City of Dalton for the purposes of the crossing in question. The paragraphs demurred to set up that provisions in this easement release Western & Atlantic from responsibility for erecting and maintaining flasher signals or watchmen at the crossing.

In our view of the case it is not necessary to decide whether Western & Atlantic could, by agreement with the city, contract away any duty it may have had to decedent, under statute or otherwise, to maintain crossing-protection devices, but only to decide the effect of the provision of the lease relied upon, to wit: "Grantee, its successors or assigns . . . shall assume *the entire cost* of . . . any flasher device or other crossing protection, except as at present otherwise required by statute." It is obvious that the city undertakes only the cost of the devices and does not assume responsibility for the erection or maintenance. This conclusion, if not obvious enough, is bolstered by other portions of the lease which provide that the city "shall *install and be responsible* for . . . drainage structures. . ."

There was no error in sustaining these demurrers. No ruling is required on the trial court's failure to rule upon other grounds of demurrers to these paragraphs and exhibit inasmuch as they were stricken by the sustaining of the demurrers below, which we affirm.

■ Western & Atlantic also contends that the trial court committed error in sustaining plaintiff's demurrer 2(b) to a portion of Paragraph 12 of its answer, wherein it was alleged that "there was erected a sign clearly indicating a railroad crossing and said sign was located on both the east and west sides of this crossing." The demurrer complained that it was not alleged that the sign was erected and located in compliance with the provisions of state law. After the demurrer was sustained Western & Atlantic amended its answer to meet the criticism urged by alleging that the sign was erected as provided by law. Upon renewal of plaintiff's demurrers, the court again sustained this ground of demurrer.

Western & Atlantic having amended its answer to meet the only criticism urged, it was error to sustain the renewed demurrer after amendment.

■ Plaintiff complains of the overruling of special demurrer 9 to the following italicized portion of Paragraph 25 of Western & Atlantic's answer: *"for further answer this defendant says that it was operating its train in a legal and lawful manner* in that as it approached the crossing it had its lights brightly burning and gave the signals as required by law by blowing the whistle two long and one short and one long blasts; that the bells on said locomotive were ringing; and said employees on said engine were maintaining a constant and vigilant lookout ahead." The grounds of the demurrer are, inter alia, that the underlined allegations constitute an erroneous conclusion of law and facts. Whether or not the allegation may be an erroneous conclusion of law for reasons urged, it does not appear on the face of the paragraph that it is an erroneous conclusion of fact, the facts upon which the conclusion is based being set out. Hence the demurrer is deficient and was properly overruled. See cases cited in Division 2(a), supra.

■ Grounds 2(a) and 2(c) of plaintiff's demurrer complain that an allegation in Western & Atlantic's answer, to the effect that crossing signs were maintained, is immaterial, irrelevant, and not defensive to the action. Whatever may have been the duty of Western & Atlantic in regard to warning devices, we cannot say that the allegation has no bearing on the defense

of decedent's failure to exercise ordinary care for his own safety, which was set up in the answer. Accordingly, there was no error in overruling these demurrers.

The court below, having sustained the general demurrer of Southern, understandably did not rule upon plaintiff's demurrers to its answer; and this court, although having reversed the sustaining of Southern's general demurrer to the petition, cannot undertake, as an original proposition, to pass upon plaintiff's demurrers to Southern's answer.

Likewise, the court refrained from ruling on any of the special demurrers which Southern filed to the petition. When these are ruled upon they may raise other questions or bring material amendments to the petition placing it in a different light when measured by a renewed general demurrer.

*Judgments reversed in part; affirmed in part. Felton, C. J., and Hall, J., concur.*