A89A1629, A89A1630. COLEMAN et al. v. ATLANTA OBSTETRICS & GYNECOLOGY GROUP, P.A.; and vice versa. A89A1631. WATERS et al. v. ATLANTA OBSTETRICS & GYNECOLOGY GROUP, P.A.

(390 SE2d 856)

POPE, Judge.

Subsequent to an unfortunate series of events, plaintiff Jennifer Harper (now Jennifer Harper Coleman) suffered a debilitating stroke. On April 27, 1984 Mrs. Harper and her (then) husband plaintiff Barry Craig Harper, visited the office of defendant Atlanta Obstetrics & Gynecology Group, P.A. (hereinafter "Obstetrics Group"), and were seen by Dr. William L. Hutchinson. The couple reported that they wished to conceive a child but that Mrs. Harper was experiencing discomfort during intercourse and decreased interest in sexual relations. Dr. Hutchinson recommended a hormone injection and Mrs. Harper received an injection of Depo-Testadiol. Approximately one month later the couple returned to the doctor's office and were seen by Dr. Frederick Christopher Bieling, another member of the Obstetrics Group. Dr. Bieling determined that Mrs. Harper was pregnant and that she had probably conceived before or about the time she received the hormone injection. Dr. Bieling informed the couple of the risk of birth defects to the unborn fetus due to exposure to the hormone plus the fact that Mrs. Harper had recently contracted a mild case of chicken pox and advised them to consider undergoing a therapeutic abortion.

On June 5, 1984, Dr. James L. Waters performed a surgical procedure on Mrs. Harper to abort the fetus and prescribed birth control pills. Although Dr. Waters received a laboratory report the following day indicating the tissue removed from Mrs. Harper did not contain the products of conception, Dr. Waters did not notify Mrs. Harper that the abortion had been unsuccessful. Instead, approximately one week after the procedure Mr. Harper notified Dr. Waters that his wife had become ill and had been diagnosed at the emergency room of the local hospital as having pelvic inflammation. A representative of Dr. Waters' office recommended that she visit her regular gynecologist for treatment. On June 19, 1984, Dr. Bieling confirmed that Mrs. Harper was still pregnant and recommended a second procedure to complete the therapeutic abortion. Dr. Bieling performed the second abortion procedure at DeKalb General Hospital on the morning of July 6, 1984. That evening Mrs. Harper suffered a massive stroke which left her permanently partially impaired.

The evidence showed that Depo-Testadiol is recommended solely for use in treating the symptoms of menopause and its use for treating decreased libido in pre-menopausal women is experimental. Ample evidence was presented that Dr. Hutchinson's administration of

the drug to Mrs. Harper failed to meet the appropriate standard of care. It is undisputed that the administration of the drug was the primary reason for Mrs. Harper's undergoing a therapeutic abortion. However, the Obstetrics Group defended Mrs. Harper's claim for damages from the stroke on the ground that Dr. Hutchinson's acts were not the proximate cause of the stroke but that the stroke was caused by the intervening acts of others plus Mrs. Harper's pre-existing physical condition.

The evidence showed that Mrs. Harper periodically suffered migraine headaches and that she had a mild congenital defect of the heart known as ventricular septal defect, or a small hole between the chambers of her heart. According to plaintiffs' expert witnesses, the stroke suffered by Mrs. Harper was caused either by vasospasm of the blood vessels in the brain or by the lodging of a blood clot in the brain. Migraine sufferers are at greater risk of vasospasm. Moreover, the hormone estrogen, contained in both the injection administered by Dr. Hutchinson and the birth control pills later prescribed by Dr. Waters, increases the risk of both vasospasm and blood clots. One of plaintiffs' expert witnesses testified that if the stroke was caused by a blood clot, the clot was formed in the pelvic region as a result of the pelvic infection which developed after the first unsuccessful abortion procedure and broke off and traveled to the heart as a result of the manipulation of the pelvic area during the second abortion procedure. Once in the heart the blood clot passed through the defect in the ventricle to the other chamber of the heart and was then pumped to the brain. The evidence showed that because of the "half-life" of Depo-Testadiol in the body, estrogen from the injection given by Dr. Hutchinson was probably no longer a factor at the time of the stroke. Both of the expert witnesses presented by plaintiffs on the issue of causation of the stroke admitted that the hormone injection itself did not cause the stroke. Both witnesses testified it was the chain of other events and factors which resulted in the stroke. However, both witnesses testified it was the negligent administration of Depo-Testadiol which commenced the chain of events resulting in Mrs. Harper's stroke.

The jury returned a verdict of $575,000 in favor of Mrs. Harper (Coleman) and $10,000 in favor of Mr. Harper, for loss of consortium, against defendants Dr. Waters and the Obstetrics Group as joint tortfeasors. The Obstetrics Group obtained a judgment notwithstanding the verdict on the ground the negligence of Dr. Hutchinson was too remote to be the proximate cause of Mrs. Harper's stroke. Plaintiffs appeal the grant of judgment notwithstanding the verdict.

## Case Nos. A89A1629 and A89A1631

1. The evidence clearly shows that Mrs. Harper's pre-existing condition and the intervening acts of others contributed to her stroke. However, it was Dr. Hutchinson's negligent administration of Depo-Testadiol which started the chain of intervening events which acted upon Mrs. Harper's condition to result in the stroke.

"The rule that an intervening act may break the causal connection between an original act of negligence and injury to another is not applicable if the nature of such intervening act was such that it could have reasonably been anticipated or foreseen by the original wrongdoer. [Cit.] It is not necessary that an original wrongdoer shall anticipate or foresee the details of a possible injury that may result from his negligence. It is sufficient if he should anticipate from the nature and character of the negligent act committed by him that injury might result as a natural and reasonable consequence of his negligence. 'In order that a party may be liable in negligence, it is not necessary that he should have contemplated or even been able to anticipate the particular consequences which ensued, or the precise injuries sustained by the plaintiff. It is sufficient, if, by exercise of reasonable care, the defendant might have foreseen that some injury would result from his act or omission, or that consequences of a generally injurious nature might have been expected.' [Cit.]" *Atlanta Gas Light Co. v. Mills*, 78 Ga. App. 690, 696 (51 SE2d 705) (1949).

A negligent actor is liable not only for the injury caused by his own acts but is also liable for any additional harm resulting from the manner in which reasonably required medical services are rendered. See Restatement (2d) of Torts, § 457 (1965). A defendant may be liable not only for all damages resulting directly from his negligent act "but also for all damage resulting from the improper or unskillful treatment of the injuries by the physician." *Smith v. Hardy*, 144 Ga. App. 168 (16) (240 SE2d 714) (1977). Here, a therapeutic abortion was reasonably required by Dr. Hutchinson's negligent act of administering an injection of Depo-Testadiol to Mrs. Harper. Consequently, he was also liable for the damages resulting from the improper or unskillful treatment by the original surgeon including the complications resulting from the second procedure made necessary by the unskillful performance of the first procedure.

In regard to the testimony of Mrs. Harper's pre-existing conditions, it has long been the rule that a tortfeasor takes a plaintiff in whatever condition he finds him. "A negligent actor must bear the risk that his liability will be increased by reason of the actual physical condition of the other toward whom his act in negligent." Restatement (2d) of Torts, § 461, Comment a (1965).

As stated in those cases cited in the lower court order, a

tortfeasor cannot be held liable "if there intervened between [the act] and the injury a distinct, successive, *unrelated*, efficient cause of the injury." (Citations and punctuation omitted.) (Emphasis supplied.) *Wanless v. Winner's Corp.*, 177 Ga. App. 783, 785 (341 SE2d 250) (1986). Accord *Cain v. Ga. Power Co.*, 53 Ga. App. 483 (186 SE 229) (1936). However, here the intervening causes which contributed to the injury were not unrelated to the act of Dr. Hutchinson but were reasonably required for medical treatment of Dr. Hutchinson's unskillful treatment, and, in turn, reasonably required for the unskillful treatment rendered in response to Dr. Hutchinson's treatment. In short, the injury was the result of malpractice in response to malpractice; nevertheless, the act of Dr. Hutchinson, agent of defendant Obstetrics Group, inexorably started the chain of events. "While the general rule is that if, subsequently to an original wrongful or negligent act, a new cause has intervened, of itself sufficient to stand as the cause of the misfortune, the former must be considered as too remote, still if the character of the intervening act claimed to break the connection between the original wrongful act and the subsequent injury was such that its probable or natural consequences could reasonably have been anticipated, apprehended, or foreseen by the original wrong-doer, the causal connection is not broken, and the original wrong-doer is responsible for all of the consequences resulting from the intervening act." (Citations and punctuation omitted.) *Church's Fried Chicken v. Lewis,* 150 Ga. App. 154, 157-158 (256 SE2d 916) (1979). The trial court erred in granting the motion for judgment notwithstanding the verdict.

2. Because we hold that the motion was improperly granted for substantive reasons, we need not address plaintiffs' remaining enumeration of error challenging the motion on procedural grounds.

### Case No. A89A1630

3. Defendant Obstetrics Group filed a cross-appeal enumerating as error that, in the event the judgment notwithstanding the verdict is overturned on appeal, the trial court erred by submitting to the jury the issue of the recoverability of damages related to Mrs. Harper's stroke. The "contingent" cross-appeal is unsupported by argument and citation of authorities. Moreover, for reasons outlined in the opinion above, the trial court did not err in submitting the issue of damages to the jury and therefore did not err in denying defendant's motion for new trial.

*Judgment reversed in Case Nos. A89A1629 and A89A1631. Judgment affirmed in Case No. A89A1630. Banke, P. J., and Sognier, J., concur.*

512

*Wood & Grant, L. Lin Wood, Jr., Wayne Grant*, for Coleman & Harper.

*Love & Willingham, Daryll Love, Robert P. Monyak*, for Atlanta Obstetrics.

*Bennett, Williams & Henry, Benjamin S. Williams*, for Waters.