A91A1919. WADE et al. v. POLYTECH INDUSTRIES, INC.
A91A1920. POLYTECH INDUSTRIES, INC. v. WADE.
(413 SE2d 468)

BIRDSONG, Presiding Judge.

Appellants/plaintiffs, Malvin R. Wade and Pamela J. Wade, husband and wife, appeal the order of the superior court granting directed verdict in favor of appellee/defendant, Polytech Industries, Inc. (Polytech). Polytech cross-appeals the ruling of the trial court granting directed verdict in favor of Malvin R. Wade as to Polytech's counterclaim against him.

Appellants were seriously injured in an airplane crash during a sales demonstration flight. Appellant, Malvin Wade, who was a Delta airline pilot with about 17 years service and over 11,000 logged flying hours of which 600 were obtained flying small airplanes, was piloting the airplane when it crashed. The airplane was owned by appellee Polytech whose vice-president, Gerald (Jerry) Cook, apparently had arranged the demonstration flight in anticipation that appellants would buy the craft. Both appellants were looking at appellee's craft, as they did not own a plane and were thinking about buying one. Pamela Wade, however, was going to let her husband make the decision whether to buy the plane, and it was her husband who, with Jerry Cook's knowledge, invited her (in the literal sense of the word) on the flight. Pamela Wade admitted in court she was relying on her husband's judgment "as to whether [she] should fly in [the] plane and not relying upon anything that anybody at Polytech said or didn't say." A friend, Dr. Leonard Pace, who also was a pilot was invited by and did accompany appellants on the flight. Dr. Pace has an air transport license and a private pilot's license with instrument rating. He had flown 250-300 hours at the time of the incident; and he had more recent experience in flying small airplanes than Malvin Wade.

Jerry Cook flew the plane to the Greensboro airport where appellants and Pace were waiting. It landed without incident. The four people climbed into the plane with Dr. Pace and Pamela Wade sitting in the back seat, with Malvin Wade and Jerry Cook in the front left and right seats, respectively. At this point, a "four star" and "taxi" checklists were performed. Although the plane was equipped with dual controls so that either Malvin Wade or Jerry Cook could fly it from their seats inside the craft, Malvin Wade actually taxied the plane to the end of the runway and thereafter piloted it. But Jerry Cook, at various intervals, "helped fly [the] airplane" by setting the flaps and helping Malvin Wade watch the instruments. At this point, Pamela Wade was checking out the upholstery and windows of the plane while Malvin Wade was conducting certain pre-flight checks. Before takeoff, a total engine run-up was performed, and takeoff was accomplished uneventfully. Prior to landing, Wade informed Cook

since he had not previously landed this plane to "stay with me and if anything at all goes wrong, you take the airplane." Wade and Dr. Pace testified that Cook never disclosed prior to the accident the plane was past its annual inspection (the fact it was past its annual inspection was not disputed) and that they would not have flown in the aircraft had they known this fact. Appellee contends they told Wade the plane was out of annual. Wade denied being told this fact.

The type of airplane being flown has a carburetor heat knob, which opens and closes a baffle to a hood around the carburetor thereby causing an increase or decrease in engine heat. This knob needs to be depressed or closed on takeoff in order to prevent a significant loss of engine power — approximated at 15-20 percent or more. When landing, a plane usually has flaps down and carburetor heat on. Upon preparing for the second takeoff, Malvin Wade was unable to close the carburetor heat knob which he had opened on landing. Jerry Cook assumed the task of depressing the knob into proper closing position, and in the process shoved it shut with enough force to cause his hand to slip from the knob and break a glass gauge on the instrument panel. The movement indicated that the cable was stuck and gave way suddenly. Malvin Wade testified that at this point Jerry Cook declared, "the carburetor heat knob is back in. *It's okay.*" (Emphasis supplied.) Everyone was satisfied the plane was ready for a second takeoff, and without benefit of a second run-up, which neither Jerry Cook nor Dr. Pace suggested, Malvin Wade attempted a second takeoff. The plane obtained "normal lift-off speed," normal RPMs, and no absence of power was detected as the plane went down the runway for takeoff; and as it started to climb everything was "normal" for the first few seconds. Nothing on the instrument panel would indicate a malfunction of the carburetor heat assembly. Suddenly it became apparent something was wrong, although the throttle, mixture control, and carburetor heat cable all appeared to be properly set. Malvin Wade testified he then shouted: "Jerry, what the hell is wrong with this thing . . . you know it better than I do. Do you want it." Cook, however, did not assume the controls or do anything to assist Wade who had no choice but to continue to fly the plane. Wade instinctively nosed the plane down to keep the engine from stalling, but the plane lost air speed and could not maintain altitude, hit a tree, and crashed to the ground.

At trial, the Wades called as an expert witness, Mr. Clarence Wise, who in addition to practical experience and education as an aircraft mechanic, flight engineer, an aircraft sheet metal repairman, an airframe and power plant mechanic, and an FAA inspector, is licensed as a commercial pilot and has investigated over 350 aircraft accidents. The trial court duly recognized Mr. Wise as an expert in the field of airplane crash investigation and in the field of avionics generally, in-

cluding pilot. Wise opined, inter alia, *and without objection* that the crash was caused by a carburetor air temperature rod which allowed the quick disconnect coupling to ride up and pop off and the rod went in without moving the baffle in the air box assembly, and that malfunction of the carburetor air box was due to lack of proper maintenance. He also testified that the problem would have been discovered had a timely annual inspection been performed; and annual inspection would have revealed the rubbing or "[t]he hanging up of the carburetor air door; and lack of an annual inspection and proper maintenance was a cause of the airplane crash." In addition, Wise testified that once the carburetor air temperature rod assembly broke and carburetor heat remained on it was not "pilot error" for Wade to fail to recognize that condition. And, while an engine run-up would reveal if carburetor heat was not working properly, a run-up is not conducted before every takeoff.

Dr. Pace testified, inter alia, that he had been taught that you do not have to do a full engine run-up if you do not shut the engine off, but he would assume that such a run-up should be conducted if something out of the ordinary occurs. Nevertheless, Dr. Pace would have done nothing different that Malvin Wade did on this flight.

Although Wade admitted that a run-up should be conducted if any problems are encountered or anything unusual occurs, he immediately clarified this answer to reflect that a run-up would be required if you have a problem "big enough or seemingly big enough" to warrant such action. Wade did not believe such a problem existed as Jerry Cook, "a qualified pilot" who has maybe 600 hours in that airplane and was the most experienced of the three pilots flying that plane, told him he would take care of the knob. Thereafter, Cook told Wade the heat knob was back in okay; Wade had no reason whatsoever to doubt this statement, as Cook knew the plane better than he did and the knob was back in proper off position. If Wade had doubted Cook's statement, he would have run-up the engine. Wade conceded that in hindsight, although not normally done, if a run-up had been conducted before the second takeoff the crash might have been avoided. Nevertheless, he repeatedly opined that a second run-up was not required and unequivocally stated that Jerry Cook never told him to conduct another run-up. *Held*:

1. A directed verdict is appropriate if there is no conflict in the evidence as to any material issue and the evidence *introduced*, with all reasonable deductions therefrom, shall *demand* a particular verdict. OCGA § 9-11-50 (a); *All Risk Ins. Agency v. Southern Bell Tel. &c. Co.*, 182 Ga. App. 190, 191 (1) (355 SE2d 465). A trial court cannot direct a verdict merely because he believes the strength or weight of the evidence lies on one side, or because he might grant a new trial if a verdict should be returned which he thinks is contrary to a pre-

ponderance of the evidence. *Findley v. McDaniel,* 158 Ga. App. 445 (280 SE2d 858). And a motion for directed verdict cannot be granted if there is any evidence creating a material issue of fact. *Armech Svc. Co. v. Rose Elec. Co.,* 192 Ga. App. 829, 831 (2) (386 SE2d 709).

In determining whether the granting of a motion for directed verdict is supported adequately by the record, we will not consider statements of witness elicited in an out-of-court hearing that were not subsequently elicited and, thus, not "introduced" in the presence of the jury. OCGA § 9-11-50 (a).

2. During the trial court's consideration of the motion for directed verdict, a discussion ensued as to the theory or theories of liability upon which appellants/plaintiffs had proceeded at trial. At the onset we note that no pretrial order was entered in this case. Moreover, under the Civil Practice Act notice pleading was substituted for issue pleading. See generally OCGA § 9-11-8. While a complaint must give notice sufficient to allow responsive pleading, it need only state a claim and does not have to allege facts sufficient to set forth a cause of action. *Bazemore v. Burnet,* 117 Ga. App. 849, 852 (161 SE2d 924). Thusly, construing the complaint on its four corners and also in the light most favorable to plaintiffs, we find the complaint put appellee/defendant Polytech on notice of a claim grounded on at least three separate legal theories: first, that Polytech was liable because it had failed to have the aircraft properly maintained for safe operations; secondly, that the crash was due to the negligent operation of the aircraft (which would per force include the negligent operation of any of the aircraft's controls, including a carburetor heat control knob) by Jerry Cook, an officer and shareholder of defendant Polytech; and, thirdly, that the crash was due to the negligence of Jerry Cook as pilot in command in directing and assisting the operation of or in operating the aircraft. In this regard, we also note that a proposed pretrial order does reflect that one of appellant/plaintiff's contentions was asserted as being that "prior to takeoff, the carburetor heat knob stuck and was negligently forced into the dashboard by [Jerry] Cook."

Further, pleadings may be amended to conform with the evidence at trial. "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." OCGA § 9-11-15 (b). "[T]he parties may, by express consent, or by the introduction of evidence without objection, amend the pleadings at will. . . . Implied consent usually is found where one party raises an issue material to the other party's case, or where [as here] evidence is introduced without objection." *McDonough Constr. Co. v. McLendon Elec. Co.,* 242 Ga. 510, 514 (250 SE2d 424); *Mortgage Savings Co. v. KKFB Investment Co.,* 196 Ga. App. 283, 284 (1) (396 SE2d 16). The evidence admitted without objection in this case reveals that one of the several

claims litigated by appellants was that their injuries resulted from the airplane crash caused by the negligent act of Jerry Cook, an officer, stockholder, and agent of appellee, in depressing the carburetor heat knob with such force as to break it in a heat-on position but causing the knob to appear to be closed.

3. The testimony is in conflict whether a run-up was required before the second takeoff when the engine of the plane had not been shut off and restarted. In arriving at this conclusion, we have not considered the concession of appellee in its response to request for admissions that: "(Technically, because the engine was not shut off between the Greensboro takeoffs, some might consider the two takeoffs as part of a single flight)."

Except in cases where the evidence is plain, palpable and undisputed, issues of negligence, contributory negligence, comparative negligence, proximate cause, assumption of risk, lack of ordinary care for one's own safety, lack of ordinary care in avoiding the consequences of another's negligence and comparative negligence are questions for the jury and are not susceptible of summary adjudication. *Thompson v. Crownover*, 259 Ga. 126, 129 (5) (381 SE2d 283); *Hercules, Inc. v. Lewis*, 168 Ga. App. 688, 689 (309 SE2d 865); *Callaway v. Pickard*, 68 Ga. App. 637, 641 (1) (23 SE2d 564); see generally *Atlanta Obstetrics &c. v. Coleman*, 260 Ga. 569, 571-574 (398 SE2d 16) (Weltner, J., concurring specially). Moreover, evidence also was conflicting regarding whether the breaking of the instrument panel glass by Jerry Cook when he pushed in the heat control knob was of such an unusual or unique character as to place appellant Malvin Wade on notice that another run-up was required. "It is the jury's function to draw an inference from the evidence when [as here] more than one inference can be drawn." *Thompson v. Crownover*, supra at 130 (6).

Assuming arguendo, that the evidence in this case had established plainly, palpably, and undisputedly that the failure to conduct a run-up was an "intervening act" on the part of Malvin Wade, nevertheless an issue of foreseeability would remain. In *Williams v. Grier*, 196 Ga. 327, 328 (2a) (26 SE2d 698), it was held that "[a] causal connection between an original act of negligence and injury to another is not broken by the 'intervening' act of a third person, if the nature of such intervening act was such that it could reasonably have been anticipated or foreseen by the original wrong-doer." (Emphasis supplied.) Accord *Coleman v. Atlanta Obstetrics &c.*, 194 Ga. App. 508 (1) (390 SE2d 856), aff'd 260 Ga. 569, supra; *Charles Seago &c. Co. v. Mobile Homes &c.*, 128 Ga. App. 261, 264 (2) (196 SE2d 346); see *Evans-Watson v. Reese*, 188 Ga. App. 292, 294 (372 SE2d 675); *Union Carbide Corp. v. Holton*, 136 Ga. App. 726, 728 (1) (222 SE2d 105); *Western &c. R. Co. v. Davis*, 116 Ga. App. 831, 836-837 (1 b) (159 SE2d 134). Thus, "[i]f the intervening cause is one which in ordinary

human experience is reasonably to be anticipated, or *one which the defendant has reason to anticipate under the particular circumstances*, the defendant may be negligent, among other reasons, because of failing to guard against it; or the defendant may be negligent only for that reason." (Emphasis supplied.) Prosser & Keeton On Torts (5th ed.), Proximate Cause, p. 303, § 44. And the risk created by the defendant may include the intervention of the foreseeable negligence of others. Id. at 44, p. 304. In this case, there is evidence in the record that the pilot most familiar with the plane was Jerry Cook, appellant's agent for the sale of the plane, that it was Jerry Cook who depressed the heat control knob, and that his actions caused the carburetor heat assembly to break as above discussed. There is also evidence that after depressing the heat knob, Jerry Cook announced that it was back in place and that "it's okay." Testimony was also given to the effect that second and subsequent engine run-ups are not automatically required between landings when the plane's engine has not been shut off, absent some unusual event or problem placing the pilot on notice that such action should be undertaken. Whether an incident constitutes such an unusual event or problem is a matter which, as here, is subject to debate among pilots. Under these circumstances, particularly including the evidence that Jerry Cook stated after depressing the carburetor heat knob that it was okay, even if Malvin Wade was required to conduct a run-up and his failure to do so was an "intervening" act, genuine issues of material fact exist from which a jury could find that such failure reasonably could have been anticipated and foreseen, within the meaning of *Williams v. Grier*, supra. *Charles Seago &c. Co.*, supra at 264; see *DeKalb County Hosp. Auth. v. Theofanidis*, 157 Ga. App. 811, 812 (278 SE2d 712).

In view of the above, we find that the trial court erred in granting directed judgment to appellee. *King v. Avtech Aviation*, 655 F2d 77 (5th Cir.).

4. It cannot be concluded as a matter of law that the negligence, if any, of Malvin Wade in operating the plane so as to cause the crash to be totally or partially attributable to him would be imputed to his wife. Where a wife is merely accompanying her husband as a guest in a plane being flown by him, and a crash occurs, which might in part be attributable to the negligence of the husband as pilot of the plane, any such negligence on his part is not attributable to the wife. Compare *Randall Bros. v. Duckett*, 53 Ga. App. 250, 254 (1) (185 SE 394). However, the wife, as a passenger and guest in the plane, cannot close her eyes to known and obvious dangers arising from the acts of the pilot or others therein (*Randall Bros.*, supra) and when negligence on the part of the pilot or others in the plane appears she " 'must act as an ordinarily prudent person would act, under the same or similar circumstances' " (*Freeman v. Martin*, 116 Ga. App. 237, 242 (2) (156

SE2d 511)). Nevertheless, an airplane, unlike an automobile, is not the type of vehicle which an untrained person normally would be expected to possess a degree of familiarity regarding either its operation or normal mechanical function. And, whether Malvin Wade's negligence, if any be found, should be imputed to his wife is a question for jury resolution. *Randall Bros.*, supra.

The question arises whether Pamela Wade, as a passenger in the plane, was an implied invitee of appellee to whom was owed the duty of ordinary care in keeping the plane safe. See generally *Lowe v. Atlanta Masonic Temple Co.*, 79 Ga. App. 575 (1c) (54 SE2d 677). " 'An implied invitation is one which is held to be extended by reason of the owner doing something *or permitting something to be done* which fairly indicates to the person entering that his entry and use of the property is consistent with the intents and purposes of the owner. . . . An invitation is implied where the entry on the premises is for a purpose which is or is supposed to be beneficial to the owner.' . . . 'To come under an implied invitation as distinguished from a mere license, the [wife must have entered the plane] for the benefit, real or supposed, of the owner or occupant, or in a matter of mutual interest, or in the usual course of business, or for the performance of some duty.' " (Emphasis supplied.) *Anderson v. Cooper*, 214 Ga. 164, 168-169 (104 SE2d 90); see *Scarborough v. Murray*, 124 Ga. App. 30 (1) (183 SE2d 216). The record contains some evidence that appellee's officer, Jerry Cook, *permitted* Pamela Wade to enter the plane as a passenger during the demonstration flight, an act which arguably was for the mutual benefit of the Wades and appellee who was trying to sell the aircraft. Consistent with the above authority and these facts, we find that a jury issue exists whether Pamela Wade became an implied invitee of appellee to whom the duty of ordinary care was owed. Compare *Davis v. Garden Svcs.*, 155 Ga. App. 34, 35 (270 SE2d 228). And the question of whether appellee exercised ordinary care as required is a question for the jury. *Lowe*, supra at 575 (2a), 582.

Additionally and contrary to the views of the trial court, we do not find as controlling, as to any of the above issues, the testimony of Pamela Wade that she was relying on her husband's judgment "as to whether [she] should fly in [the] plane and not relying upon anything that anybody at Polytech said or didn't say." This evidence does not give rise to the imputation of her husband's negligence if any upon her, absent the showing that she closed her eyes to obvious dangers, as above discussed. Neither does the evidence negate the implied invitation extended by appellees when their agent permitted Pamela Wade to enter the aircraft for the mutual benefit of both the Wades and appellee. Further, this evidence is inadequate to give rise to equitable estoppel or waiver, as a matter of law.

In regard to equitable estoppel, the record reflects that Pamela

Wade neither by her statements nor conduct at the time engaged in any intentional deception or gross negligence amounting to constructive fraud, or misled or prejudiced appellee or its officer or otherwise lulled them to their detriment into believing they were released from their duty to exercise the requisite degree of due care for her safety aboard their plane. Thus, equitable estoppel has not been established, as a matter of law, and cannot provide the basis for a directed verdict against Pamela Wade. See generally 11 EGL Estoppel, §§ 46-53; 28 AmJur2d, Estoppel and Waiver, § 27. And if upon retrial additional evidence should raise an issue of equitable estoppel, that issue should be resolved by the trier of fact. *Armstrong v. California Fed. &c. Assn.*, 192 Ga. App. 508, 510 (3) (385 SE2d 113).

In regard to waiver, neither did Pamela Wade by her statement at trial intentionally relinquish any known right, claim, or privilege against appellee or its officer, or in any manner expressly waive the duty of ordinary care owed by appellee to her for her safety aboard the aircraft. Accordingly, a waiver has not been shown to exist as a matter of law which would support a grant of directed verdict against her (see generally 28 AmJur2d, supra at §§ 154-158), and thus any issue of waiver would at best have raised a question for the jury.

We have examined the authority relied upon by appellee and find it not to be controlling in the disposition of appellants' enumerations of errors. We conclude that the trial court erred in granting motion for directed verdict in favor of appellee and against appellants Malvin and Pamela Wade in Case No. A91A1919.

5. Cross-appellant/appellee asserts the trial court erred in granting directed verdict against it and in favor of cross-appellee/appellant, Malvin Wade, as to the counterclaim for damage to the airplane. After granting Polytech a directed verdict as to the claims of the Wades against it, the trial court sua sponte and without objection granted directed verdict against Polytech as to its counterclaim against Malvin Wade.

Under these circumstances, cross-appellant had no opportunity to object to the ruling before it was made. The question then arises whether by failing to take exception immediately after directed verdict was granted, cross-appellant waived his right to have the issue considered on appeal.

We conclude that when the trial court sua sponte grants a directed verdict, the party against whom the verdict was directed may challenge the grant by timely appeal notwithstanding the lack of either an objection or exception to the trial court's ruling. OCGA § 9-11-46 (a); Davis & Shulman, Ga. Prac. & Proc. (5th ed.), § 14-4 and n. 1 (the language in OCGA § 9-11-46 (a) "[f]or all purposes for which an exception has heretofore been necessary" has no actual application to any preexisting Georgia law). *Jackson v. Easters*, 190 Ga. App. 713,

715 (3) (379 SE2d 610) is distinguishable from the facts of this case. The dictum found in *State Farm &c. v. Wendler*, 120 Ga. App. 839, 842 (2) (172 SE2d 360) is not deemed controlling in this case, particularly in view of the express statutory provisions of OCGA § 9-11-46 (a).

Moreover, in *Kelly v. Chrysler Corp.*, 129 Ga. App. 447 (199 SE2d 856), the trial court granted a motion for directed verdict and there appears to have been no objection or exception taken thereto at trial although, unlike the case at bar, the trial court did announce in advance its intention to entertain a motion for directed verdict if plaintiff's testimony proved to be along the lines indicated by defense counsel. On motion for reconsideration appellant argued inter alia that the trial court failed to comply with Code Ann. § 81A-150 (a) (OCGA § 9-11-50 (a)) in that it directed a verdict before plaintiff had closed his case. The court declined to consider the issue on appeal on the basis that "[n]either of these contentions was made in the motion for new trial nor as an enumeration of error. Accordingly, they cannot be considered upon appeal." Id. at 452 (1). Inherent within this holding is the proposition that if the contentions had been raised, as in the case at bar, in an enumeration of error, the propriety of the ultimate judgment could have been considered upon appeal. We find this to be a fundamentally fair result, under the circumstances before us, and will apply it in resolution of the appeal of Case No. A91A1920. See also *Ford v. State*, 200 Ga. App. 376 (408 SE2d 166).

We conclude the trial court erred in ruling on the motion for directed verdict before Polytech had an opportunity to present its evidence (OCGA § 9-11-50 (a); *Mallard v. Mallard*, 221 Ga. 480, 481 (145 SE2d 533)), particularly as the issue of contributory negligence of Jerry Cook, the ground primarily announced by the trial court in support of its directed verdict, was a matter for the jury (*Soto v. Roswell Townhomes*, 183 Ga. App. 286, 288 (358 SE2d 670)).

*Judgments reversed. Pope and Cooper, JJ., concur.*

DECIDED NOVEMBER 5, 1991 —
RECONSIDERATION DENIED NOVEMBER 21, 1991.

*Awtrey & Parker, A. Sidney Parker, J. Lynn Rainey*, for appellants.

*Jones, Cork & Miller, Hubert C. Lovein, Jr.*, for appellee.