### A00A0918. WILLIAMSON et al. v. ABELLERA et al.
(537 SE2d 130)

JOHNSON, Chief Judge.

Elaine Williamson and her mother, Lucille Morris, sued attorney Ronald Abellera and his employer, the law firm of Blackburn, Walther & Sloan, LLC, for legal malpractice. The trial court granted Abellera and the law firm summary judgment on the ground that there was an unforeseeable intervening act between their actions and the injury. Because the record contains evidence that the intervening act could reasonably have been foreseen, summary judgment was not appropriate, and therefore, we reverse.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.[1] A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.[2]

The record reveals that on May 12, 1997, Williamson and Morris agreed to sell certain real property. The purchaser financed the property through a mortgage lender. Blackburn, Walther & Sloan represented the lender, and Abellera was the closing attorney.

During the closing on June 6, 1997, Williamson received a check in the amount of $209,010.11. After the parties to the transaction had signed the closing documents, a conversation ensued in the conference room regarding the payment of capital gains taxes. The purchaser, the purchaser's fiancé, the purchaser's real estate agent, Williamson, Morris, Williamson and Morris' real estate agent, and Abellera were in the room, and Abellera stated that a tax-free like-kind exchange of property, pursuant to section 1031 of the Internal Revenue Code, could be done if the parties were willing to resign documents. Everyone agreed to do so, and Abellera handed Williamson a letter and brochure from Section 1031 Services, Inc. The material described the company as an "Exchange Facilitator" and "Licensed Escrow" and named James Gideon as the company's president. Abellera told Williamson, "you can call him."

On June 9, 1997, Williamson called Section 1031 Services and

---

[1] OCGA § 9-11-56 (c).

[2] *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

spoke with a person who identified himself as James Gideon. Gideon defined a section 1031 exchange, explained that Section 1031 Services could serve as the facilitator of such an exchange, and assured her that her money would be safe in a trust account at Wachovia Bank. Williamson and Morris decided to proceed with an exchange and to use Section 1031 Services as the facilitator.

Abellera soon received a package from Gideon that included an exchange agreement, an escrow agreement, instructions to complete the documents, and instructions to wire funds to a bank account used by Section 1031 Services. Accompanying the package was a cover letter that indicated that Section 1031 Services was an "Exchange Facilitator" and a "Licensed Escrow" and that Gideon possessed a juris doctorate degree. Abellera prepared the exchange forms and new closing documents that reflected that the sellers desired a section 1031 exchange.

On June 16, Williamson went to the law firm, returned the $209,010.11 check, and signed the necessary documents, including the escrow agreement that provided that Williamson and Morris would deposit funds with Section 1031 Services to effect the exchange, which funds Section 1031 Services would hold in escrow in its account at Wachovia. Abellera later mailed documents to Morris and to the purchaser for their signatures and wired the proceeds to Section 1031 Services' account on July 17, 1997. When Williamson later reported to Abellera that she was repeatedly unable to contact Gideon, Abellera sent a fax to "James Gideon or anyone at Section 1031 Services," stating "Your phone is disconnected and one of our sellers that used your services is extremely worried. Please call me. . . ." Abellera never received a response. Shortly thereafter, Williamson and Morris discovered that Gideon had fled the country, taking their funds, along with the funds from several other victims.

Williamson and Morris sued Abellera and Blackburn, Walther & Sloan, alleging that an attorney-client relationship existed and that they breached the duty of care by, after the original purchase and sale agreement had closed, providing legal advice to effect a section 1031 exchange, recommending Gideon and Section 1031 Services, and rendering legal services that resulted in their loss. Abellera and Blackburn, Walther & Sloan moved for summary judgment on the grounds that no attorney-client relationship existed and that Gideon's theft of the funds was an intervening criminal act. The trial court granted summary judgment, ruling

> there may be a jury issue as to whether or not an attorney-client relationship existed between the parties. However, construing the facts most favorably to the Plaintiffs, and even assuming that there was an attorney-client relation-

ship between the parties, this Court finds that as a matter of law, any negligence of the Defendants was not the proximate cause of the Plaintiffs' damages, due to an intervening criminal act.

Williamson and Morris appeal.

1. Williamson and Morris contend that the trial court erred in granting summary judgment, arguing that there was evidence of an attorney-client relationship and of a breach of the professional duty of care. Although the motion for summary judgment raised the issue of whether an attorney-client relationship existed, the trial court did not rule on that issue. Consequently, that issue is not properly before this Court, and we cannot consider it.[3]

2. Williamson and Morris contend that the trial court erred in finding that Abellera and Blackburn, Walther & Sloan were not the proximate cause of their damages due to an intervening criminal act.

> [G]enerally, an independent, intervening criminal act of a third party, without which the injury would not have occurred, will be treated as the proximate cause of the injury superseding any negligence of the defendant unless the intervening criminal act is a reasonably foreseeable consequence of the defendant's negligent act.[4]

Williamson and Morris argue that the absconding of their funds was a foreseeable consequence of Abellera's advising them to use a facilitator about whom he knew nothing.

In the exchange that was anticipated here, Section 1031 Services was to serve as the facilitator and would hold over $200,000 of Williamson and Morris' funds. Among the dangers of entrusting property to another is the risk of theft. Thus, it is reasonably foreseeable that such funds might be lost if the attorney fails to exercise ordinary care, skill, and diligence in selecting or recommending a facilitator for that role.

It is uncontroverted that Abellera made no efforts to ascertain or verify the identity, credentials, or trustworthiness of Gideon or Section 1031 Services. Abellera and Blackburn, Walther & Sloan do not dispute that they had no prior history with Gideon or Section 1031 Services, other than Abellera's receipt of the solicitation letter and brochure that Abellera assumed was mailed to him as part of a mass

---

[3] *Devins v. Leafmore Forest Condo. Assn. &c.*, 200 Ga. App. 158, 159 (3) (407 SE2d 76) (1991).
[4] *Tucker Fed. Sav. &c. Assn. v. Balogh*, 228 Ga. App. 482, 484 (491 SE2d 915) (1997); see also *Coleman v. Atlanta Obstetrics &c. Group*, 194 Ga. App. 508, 510 (1) (390 SE2d 856) (1990).

mailing to members of the real estate section of the Georgia bar.

Abellera and Blackburn, Walther & Sloan assert that there is no evidence in the record that Gideon's propensity to steal Williamson and Morris' money was known or reasonably available. But Williamson and Morris' expert witness stated in his affidavit that Abellera's failure to investigate Gideon and Section 1031 Services prevented him from discovering that "Gideon" was an alias, that Gideon had only recently arrived in the local area, that Gideon was not a holder of a juris doctorate degree, that neither Gideon nor Section 1031 Services was a "licensed escrow" agent, that neither Gideon nor Section 1031 Services had ever established a trust account at Wachovia Bank, and that Section 1031 Services had been incorporated for less than one year before Abellera received the company's brochure.

We therefore reject Abellera and Blackburn, Walther & Sloan's argument that Gideon's conduct constituted an unforeseeable intervening act that broke the causal connection between their negligence and the injury.

> [I]f the character of the intervening act claimed to break the connection between the original wrongful act and the subsequent injury was such that its probable or natural consequences could reasonably have been anticipated, apprehended, or foreseen by the original wrong-doer, the causal connection is not broken, and the original wrong-doer is responsible for all of the consequences resulting from the intervening act.[5]

Because the record contains evidence that Abellera and Blackburn, Walther & Sloan might have reasonably foreseen that the nature and character of their acts and omissions could result in injury, the trial court erred in ruling, as a matter of law, that those acts and omissions were not proximate causes of the injury due to an intervening act.[6]

*Judgment reversed. Smith, P. J., and Phipps, J., concur.*

DECIDED JULY 7, 2000 —
RECONSIDERATION DENIED JULY 25, 2000

*Crowley, Appel, Starkey & Holbrook, Carl A. Crowley III, James*

---

[5] (Citation and punctuation omitted.) Id. at 511 (1).

[6] See *Schernekau v. McNabb*, 220 Ga. App. 772, 773 (470 SE2d 296) (1996) (proximate cause is properly reserved for the jury and can only be appropriately addressed on summary judgment in plain and indisputable cases).

*L. Ford, Sr.*, for appellants.

*Troutman Sanders, Daniel S. Reinhardt, William M. Droze*, for appellees.