41195, 41196. CITIZENS & SOUTHERN NATIONAL BANK
v. HASKINS et al.; and vice versa.
41197. MERCER v. HASKINS et al.
(327 SE2d 192)

CLARKE, Justice.

These appeals arise from a suit filed by Louis and Harry Haskins as individual co-trustees and as beneficiaries along with their sister, Ester Friedman (hereinafter "plaintiffs"), against a corporate co-trustee, Citizens and Southern National Bank ("CSNB"); Sidney Haskins, the other individual co-trustee and those who held remainder

---

interests in the trust were also named as defendants. The trust at issue was established in the will of Arthur Haskins, who died in 1959, and named three of his sons and CSNB as co-trustees; the trust was funded in 1974.

Arthur Haskins was survived by five children and twelve grandchildren. The trust provides that income be paid equally to his five children during their lifetimes and to descendants of a deceased child per stirpes. The trust terminates upon the death of the last surviving child or grandchild who was in life at the time of Arthur Haskins' death. At termination, the corpus is to be distributed to the lineal descendants per stirpes.

The will directs that the trust pay income equally to each child "during their lifetime at least annually or at such more frequent intervals as the trustees may agree upon." The will also sets forth an allocation clause for the trust; because the use of this allocation clause is in contention in the litigation we now set it out here in full:

"(m) My executors and trustees shall have discretion to determine whether items should be charged or credited to income or corpus or allocated between income and corpus in such manner as they may deem equitable and fair under all the circumstances, including the power to amortize or fail to amortize any part or all of any premium or discount, to treat any part or all of the profit resulting from the maturity or sale of any asset, whether purchased at a premium or at a discount, as income or corpus or apportion the same between income and corpus, to apportion the sales price of any asset between income and corpus, to treat any dividend or other distribution on any investment as income or corpus or apportion the same between income and corpus, and, except as provided in paragraph (j) above, charge any expense against income or corpus or apportion the same and to provide or fail to provide a reasonable reserve against depreciation or obsolescence on any asset subject to depreciation or obsolescence, as they may reasonably deem equitable and just under all the circumstances."

When the trust was funded in 1974, the co-trustees were CSNB, David Haskins, Louis Haskins and Sidney Haskins. David Haskins died in 1979 and was replaced by Harry Haskins under the terms of the will.

This action was filed by Louis, Harry and their sister Ester Friedman; she is an income beneficiary along with the other children but not a co-trustee. Co-trustee Sidney was named as a party defendant.

The plaintiffs contended that the corporate trustee, CSNB, had been negligent in its management of the trust, violated its fiduciary duties, breached its contractual duties, made unauthorized investments and misrepresented the status of the trust properties to the co-

trustees. They sought actual damages, punitive damages and expenses of litigation.

Plaintiffs also contended that the corporate trustee, CSNB, had breached the trust by failing to properly exercise its discretion as re- quired by the allocation clause and sought removal of CSNB as co-trustee. The complaint also asked for an interpretation of the allocation and for the court to order an allocation of capital to income.

The issue of damages was tried before a jury with the issues of the allocation clause, removal of trustee and trustee fees being reserved for the court.

The plaintiffs were seeking actual damages of approximately $400,000 based upon allegations of bonds purchased negligently and without authority and which had either been sold at a loss or were still in the trust, failure to communicate recommendations to sell certain stock and negligence in either selling or failing to sell other stocks.

After a lengthy trial the jury found CSNB, as co-trustee, to be responsible for losses in value of the Haskins trust. By way of a special verdict form they awarded $28,167 as loss on bonds purchased and still held by the trust. The jury awarded no damages for stocks sold at a loss or bonds sold at a loss. The jury declined to award punitive damages but did award attorney fees in the amount of $10,000 finding the bank had been stubbornly litigious or had caused plaintiffs unnecessary trouble and expense.

The trial court disposed of the remaining issues without a jury. He made findings on the plaintiffs' request for allocation and CSNB's request on guidelines for future allocations. The court found that the corpus of the trust was valued at approximately $907,000 when funded in 1974 and approximately $1,456,695 at the time of trial. An allocation under the terms of the trust from corpus to income had not been made since December of 1974. The court did not remove any trustees, ordered that an allocation from corpus to income of $250,000 be made immediately and paid to the income beneficiaries and ordered that no further allocation be made until two years after the death of the last surviving child of Arthur Haskins. He ordered trustee fees due to CSNB under a contract with Arthur Haskins to be paid from corpus and declined to award further attorney fees to either the plaintiff or to CSNB.

## I.

We first turn to the appeals involving the jury trial. CSNB contends there is no evidence to support the finding of breach of trust on their part and even if damages were allowable, the evidence does not support a $28,000 verdict on the bonds, but a $17,000 loss at most.

The bank further contends that the attorney fee award of the jury was not authorized. Plaintiffs/cross-appellants complain that the jury was not properly qualified as to whether or not they were employees of CSNB or had banking relationships with the bank. They also contend it was error not to give their request to charge on strict liability for unauthorized purchases by a co-trustee and that it was error to charge the jury that they could consider overall performance of the trust in considering punitive damages and attorney fees. They also contend the court erred in allowing evidence of transactions which occurred before the creation of the trust.

1. The issue of the bank's liability is whether there was sufficient evidence of a loss and whether that loss was caused by a breach of trust on the part of the bank. The bank contends there can be no liability for the decline in the value of the bonds which was caused by rises in interest rates.

A trustee is not liable for losses or depreciation in the value of trust property unless there has also been a breach of trust. Restatement of Trusts 2d, § 204 (1959). The bank relies on this principle and market fluctuation cases in their contention that as trustee they are not liable for loss on the bonds. See *Hamilton v. Neilsen*, 513 FSupp. 204 (N.D. Ill. 1981) and *Stark v. United States Trust Co. of New York*, 445 FSupp. 670 (S.D. N.Y. 1978), which held that a trustee is not a guarantor of the value of assets and that where a loss is caused solely by changes in the financial market, there is no liability. However, a trustee may be liable for losses if there is a breach of trust.

"A breach of trust is a violation by the trustee of any duty which as trustee he owes to the beneficiary." Restatement, supra, § 201. One manner in which the trustee may breach the trust is the failure to exercise the degree of care and skill as a person of ordinary prudence would exercise in administering the trust. Scott, The Law of Trusts, § 201 (3rd ed.). "A trustee is under a duty not merely to exercise care . . . but he must also exercise a reasonable degree of skill. The standard is an external standard, that of the reasonably prudent man." Scott, supra, § 227.2. OCGA § 53-8-2.

The bank contends there can be no liability for the bond losses because they were proper fiduciary investments when made and the bank was authorized to retain them. It is not disputed that the bonds were a proper investment in the sense that they were a legal investment. The issue is whether it was proper to retain them when the financial market changed applying the standard of the prudent man, or, more importantly, whether adequate attention was given to the administration of the trust estate.

The Restatement provides that "if the trustee holds property which when acquired by him was a proper investment, but which thereafter becomes an investment which would not be a proper in-

vestment for the trustee to make, it becomes the duty of the trustee to the beneficiary to dispose of the property within a reasonable time." Restatement, supra, § 231. This duty is a continuing one and although it does not require a trustee to "watch the ticker as a speculator would" it does require review and the exercise of the necessary care and skill. Scott, supra, § 231.

Courts have held that a violation of the prudent man rule or similar standard is a breach of trust creating liability for any loss caused thereby. *Steiner v. Hawaiian Trust Co.*, 393 P2d 96 (1964); *In re Mendleson's Will*, 261 NYS2d 525, 541 (1965), which states "if the prudent thing to do was sell, failure to sell was a breach of duty." The court in the present case charged the jury that if a trustee has greater skill than the man of ordinary prudence he is under a duty to exercise it. There was no objection to this charge and the principle is supported in law and was authorized by the facts of this case. See Restatement, supra, § 174; *Steiner*, supra.

There being no dispute between the parties here as to the principles of law, we must decide whether a surcharge was authorized under the facts of this case.

The trust assets as originally composed were almost entirely common stocks. At a February 1975 meeting of the co-trustees, it was agreed to leave around 60% in common stock, place 35% in income yielding corporate bonds of short or intermediate maturity dates and 5% in short term government obligations. The security and stocks were put in nominee status in the name of Bibbco, a corporation owned by CSNB. After disagreements arose, co-trustee Sidney Haskins requested in writing to the bank that the securities be returned to the names of the individual co-trustees in May of 1978.

Disagreements over the allocation clause began in June of 1975. In the beginning of 1976, a new account officer took over the Haskins trust for the bank and later in 1976, the relationship between the co-trustees further deteriorated.

There were no meetings between the individual co-trustees and the bank from March of 1976 to August of 1978. Plaintiffs contended below that the bank officials refused to deal with them personally and that the trust portfolio was not reviewed or monitored during that time, all in violation of the bank's duty to the trust. The minutes of the bank's trust committees and notes of the portfolio manager reflect no activity for extended periods. When a trustees meeting was held in August of 1978, another controversy came to the surface when objections were made by David Haskins to a fee contract submitted by the bank. At this point the bank threatened to resign as co-trustee.

Plaintiffs presented testimony from an expert witness on the issue of stock and bond values and financial management of an investment portfolio. He testified that while many of the bonds were proper

investments when purchased prudent fiscal management would have required them to be sold during 1977 based upon economic conditions existing at that time. In his opinion the bonds at issue were imprudently retained and other long term bonds imprudently purchased during a period of continually rising and fluctuating interest rates. He also testified that prudent management required more frequent monitoring of assets during a volatile market as existed from mid-1977 through the early 1980's.

He also testified that the Haskins trust would have realized an annual return of 7.24 percent if it was left unmanaged as funded in 1974. As managed, the trust realized an annual rate of return of 3.72 percent.

In *Stark*, supra, relied on by CSNB in this case, the court found each "decision to retain or to sell at a given time was made in the exercise of a good faith and prudent judgment based upon existing and reasonably projected economic factors," and that the decision to retain certain securities was based upon "careful and informed deliberation[s]." 445 FSupp. 670, 678, 680. Plaintiffs here presented evidence of failure to monitor, failure to meet with the individual co-trustees and some evidence in support of their claim that because of disputes over fees and allocation, CSNB failed to exercise the necessary care and skill over the trust assets which was a continuing duty. On appeal the evidence must be construed to uphold the verdict which has the approval of the trial judge and if there is any evidence to support a verdict it must be affirmed. *Pierce v. Pierce*, 241 Ga. 96 (243 SE2d 46) (1978). Reviewing the extensive evidence and lengthy trial testimony we cannot say there was no evidence that CSNB breached its duty as corporate co-trustee causing a loss in value of the trust assets through failing to exercise the care and skill required. In so holding, we do not imply that the question of the quality of judgment in holding or disposing of trust assets is enough to present a jury question as to any possible breach of duty by the trustee. We do hold however that when this is coupled with evidence of failure to review or monitor the trust estate and refusal to meet with co-trustees, a jury question on the issue of breach of duty exists.

2. CSNB next contends that even if there is liability for bond loss, the verdict of $28,167 is excessive in that the net loss in the value of the bonds is closer to $17,000. Plaintiffs contend the evidence at trial showed a net loss in value of $22,000 and that the evidence of actual losses to the trust far exceeded the amount of the verdict based upon annual losses of return on principal which should have been realized under prudent management. Where the amount of a verdict is within the range of testimony it will not be disturbed on appeal. *Mizell v. Spires*, 146 Ga. App. 330 (246 SE2d 385) (1978). The trial judge charged the jury that if they found that the bank was negligent

and that the negligence caused a loss, they should consider the amount plaintiffs would have received had the securities been sold when the duty to sell arose and that the trust was entitled to damages "as would put it in a position substantially equivalent to that which it would have had had there been no wrong committed." There was no objection to this portion of the charge and given the range of testimony we reject CSNB's contention that the verdict is excessive as a matter of law.

3. CSNB also contends that there can be no recovery for bonds held and not sold because the loss is only a paper loss and the plaintiffs, as individual co-trustees, never approved their sale. Under the facts as alleged by the plaintiffs we find no merit to these enumerations of error. Plaintiffs' case is based on their allegation (disputed by CSNB) that the reason a sale of the bonds could not be consummated as needed was the refusal of CSNB to meet with them to discuss trust assets. Furthermore if a trustee is liable for failure to dispose of imprudent investments within a reasonable time, it cannot be that there is no liability if the securities are never sold. The jury declined to award damages for bonds which had declined in value but had been sold to cut the losses.

4. The remaining enumeration of CSNB on the jury verdict is the issue of attorney fees based upon bad faith or stubbornly litigious of $10,000. The bank argues that in this equitable action against a trustee, attorney fees are not allowable as a matter of law. It is also argued that the failure of the jury to award punitive damages establishes that there was no fraud or bad faith. This enumeration is based upon the principle that trusts are subjects of equity, OCGA § 53-12-1, and relief is generally, though not always, sought through courts of equity. Scott, supra, § 197. Bogert, The Law of Trusts and Trustees, § 870 (Rev. 2d ed.). Also cited are cases from other jurisdictions which hold that where one is proceeding in equity only, punitive measures of damages are not allowable. See, e.g., *Santos v. Bogh*, 298 S2d 460 (Fla. App. 1974); *Dekle v. Vann*, 284 Ala. 142 (223 S2d 30) (1969).

Plaintiffs point out that in Georgia, a statutory right of action against the negligence of a trustee is specifically provided, OCGA § 51-1-19, and that equity's jurisdiction over trusts is not exclusive but concurrent with the court of law. *Bateman v. Patterson*, 212 Ga. 284 (92 SE2d 8) (1956); *Campbell v. Trust Co. of Ga.*, 197 Ga. 37 (28 SE2d 471) (1943); *Park v. Park*, 65 Ga. 747 (1880).

OCGA § 13-6-11 allows attorney fees by a jury in cases where the defendant has "acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense." This court has specifically held that attorney fees are allowable under this section in equity actions. *Jones v. Spindel*, 239 Ga. 68 (235 SE2d 486) (1977); *Grant v. Hart*, 197 Ga. 662 (30 SE2d 271) (1944). Therefore,

the claim that they are not allowable as a matter of law is without merit.

Neither is there merit to the claim that failure of the jury to award punitive damages will preclude upholding an award of expenses of litigation as they are independent measures of damages and not dependent on each other. *Standard Oil Co. v. Mt. Bethel Church*, 230 Ga. 341 (196 SE2d 869) (1973). Those in a fiduciary relationship to plaintiffs may be liable for attorney fees where the acts of one in a position of trust cause unnecessary trouble and expense. *Dubose v. Box*, 246 Ga. 660 (273 SE2d 101) (1980).

5. We now turn to the plaintiffs' complaints surrounding the jury trial in their cross-appeal. In addition to seeking redress for the bonds negligently held, plaintiffs also sought to recover $81,251 from bonds allegedly negligently held and sold at a loss, $25,000 for failure of CSNB to transmit a recommendation to sell AMAX stock and other alleged negligence and misrepresentations concerning stock sales amounting to losses of over $275,000. The jury awarded no recovery on these claims or on punitive damages.

It is first contended that the trial court erred in failing to qualify all jurors as to whether they were employees of CSNB or had banking relationships with CSNB as plaintiffs had requested in the pre-trial order. The jurors were initially qualified as to whether they were officers, directors or stockholders of CSNB or its parent company. The record indicates that no objection was made to this question at trial nor is there any indication that objections were then raised to the qualifications of the jurors. The jurors were asked to state their place of employment and none were employees of CSNB. Plaintiffs have shown no harm.

6. Plaintiffs enumerate as error failure to give their requested charge on strict liability for losses if a co-trustee makes unauthorized purchases. We agree with CSNB that the request was not adjusted to the evidence and therefore find no error.

7. The court charged the jury that they could consider overall performance of the trust in considering the question of punitive damages and attorney fees. Plaintiffs contend this is error. It is true that a trustee may not offset a loss caused by a breach of trust by a separate gain in the trust. Restatement, supra, § 213. However, this principle was charged to the jury and is a distinct issue from that of punitive damages. Overall performance would be relevant to the issues of conscious indifference or bad faith, and, furthermore, there was no objection to this charge.

8. We find no error in plaintiffs' remaining enumerations regarding the trial.

## II.

9. The trial court tried without a jury the issues of plaintiffs' entitlement to allocation, the removal of CSNB as corporate trustee, removal of the plaintiff co-trustees or excluding them from allocation decisions, trustee fees for CSNB and the requests from each side for attorney fees.

The court ordered that a $250,000 allocation to income beneficiaries be made immediately. It was ruled that CSNB was entitled to trustee fees of $21,664.96 for services between 1976 and 1983 and that the individual trustees be paid no fees for that period but would receive future fees as they came due under the fee contract. The fee to CSNB was ordered paid from corpus. The court ruled that all parties would bear their own attorney fees except for the guardian ad litem appointed by the court to represent the remaindermen; the trustees were ordered to pay him $5,000 from the corpus of the trust.

In the CSNB appeal it is contended the judge abused his discretion in allocating $250,000 to income and in depriving the trustees of allocation powers, erred in not removing Louis and Harry Haskins as co-trustees, erred in awarding its trustee fees from corpus and not awarding interest and erred in failing to award attorney fees to CSNB for defending the suit.

In the cross-appeal the plaintiffs contend it was error to fail to remove CSNB as co-trustee, error to fail to allow reimbursement of their expenses from corpus, and to remove all allocation discretion from co-trustees.

The appeal of the guardian ad litem representing the remaindermen takes issue with the $250,000 allocation to income beneficiaries and the award of trustee fees to CSNB from corpus.

The award of $250,000 was based upon several factors. No allocation had been made since 1974 and there was evidence that CSNB views any allocation to income beneficiaries as not being in the best interest of the remaindermen and therefore improper at any time. During this period when CSNB refused to negotiate on allocation, the corpus of the trust increased approximately $550,000. The court also considered the intentions of Arthur Haskins in funding the trust which provides for payments to his children *at least* annually and provides for allocation to income (as set forth in the beginning of this opinion). The court found the $250,000 was reasonable in light of the failure of the co-trustees to agree to any allocation for 9 years, the present ages of the children of Arthur Haskins, 73, 71, 68 and 63, and because of the court's decision that no further allocation which would benefit these children be made.

As to future allocations benefiting the grandchildren of Arthur Haskins per stirpes, he ruled that no allocation to income be made

until two years after the death of the last surviving child. If the corporate trustee again decided allocation to be inappropriate at that time the question will again be considered by the court upon a petition by the income beneficiaries. This prohibition extends only to allocation; the court ordered that regular income continue to be distributed according to the terms of the trust.

The court concluded there was sufficient evidence before it to remove CSNB as co-trustee and to remove Louis and Harry as co-trustees, thereby leaving Sidney and another court-appointed corporate trustee to manage the trust. The court instead chose the course of removing their allocation discretion, leaving the day-to-day management as Arthur Haskins desired, with his sons and CSNB.

In trusts like the present one with successive beneficiaries, that is income to a beneficiary for life and the principal later to other beneficiaries, "the interests of the two beneficiaries are to a certain extent antagonistic, and the trustee is under a duty so to administer the trust as to preserve a fair balance between them." Scott, supra, § 232. Scott also recognizes in this section that it is "not uncommon" for a settlor to provide that principal be applied to income for a life beneficiary.

While there are rules for categorizing items as income or principal, the settlor may authorize the trustee to allocate interest to income which would otherwise be principal and vice versa. Scott, supra, § 236.15; Bogert, supra, § 816. When exercising this power the trustee must "act impartially as between income and principal beneficiaries . . . [the trustee] should take into consideration the purposes of the settlor as shown by the language of the instrument, his relations with the beneficiaries when the trust was drawn, and the financial and other conditions surrounding the beneficiaries at the beginning of the trust and at the time for the allocation of the receipt." Bogert, supra, § 816 at 363. See also 27 ALR2d 1313. Discretion given in instruments to trustees to allocate must be examined in light of the intentions of the testator or settlor. *In re Heard's Estate*, 107 Cal. App. 2d 225 (236 P2d 810) (1951).

All of the parties before the court in this case were asking the court to intervene on the issue of allocation. CSNB's complaint in regard to the allocation is that it is too high and not justified under the facts of this case. The appeal of the guardian ad litem representing the remaindermen joins in this complaint. The question on appeal is not whether the court abused its discretion in ordering an allocation from principal to income but whether the allocation ordered is excessive. The court decision was not only based upon the increase in value and intent of the testator, but also on the failure of CSNB to exercise its allocation discretion, the court's refusal to remove any co-trustees, and its mandate that no further allocation be made to the children of

Arthur Haskins. Thus the propriety of amount of the allocation is dependent upon the court's conclusion that no trustees would be removed, even though he found the facts before him would authorize removal of plaintiff-co-trustee and CSNB.

A trustee may be removed by the court "if his continuing to act as trustee would be detrimental to the interests of the beneficiary. The matter is one for the exercise of a reasonable discretion by the court." Restatement, supra, § 107 (comment a). This discretion of the court in deciding removal issues is generally not interfered with by appellate courts absent an abuse of discretion. Bogert, supra, § 527. *Griffith v. First National Bank &c.*, 249 Ga. 143 (287 SE2d 526) (1982). A trustee appointed by the settlor is less readily removed by the court. Restatement, supra, § 107 (comment f); Bogert, supra, § 527; Scott, supra, § 107.1. "The court will not ordinarily remove a trustee named by the settlor upon a ground existing at the time of his appointment and known to the settlor and in spite of which the settlor appointed him, although the court would not have appointed him trustee." Restatement, supra, § 107 (comment f). See also *Lovett v. Peavy*, 253 Ga. 79 (316 SE2d 754) (1984), on conflict of interest known to settlor.

Grounds for removal include failure to act, unreasonable failure to cooperate with co-trustees, commission of a serious breach of trust, crimes and dishonesty. See Restatement, supra; Bogert, supra; Scott, supra. It has also been said that a finding of negligence does not automatically require removal and that hostility or friction is not enough in and of itself; in these instances the court must decide if their existence will cause future problems, and/or impede the performance of the trust by making the performance of duties of a trustee impossible. Bogert, supra, § 527; Scott, supra, § 107; Restatement, supra, § 107.

A court may control the discretionary acts of a trustee when the trustee fails to act; "if the trustee is authorized in his judgment to make certain payments to a beneficiary in the discretion of the trustee, and instead of exercising any judgment in the matter he arbitrarily declines to make any payment, the court may interpose." Scott, supra, § 187.3. The court may also interpose its judgment when a trustee is acting from improper motives in exercising discretion. Scott, supra, § 187.5. The question of motives and conflict of interest arises when the trust gives discretionary powers to make payments to a trustee who is also the beneficiary of such payments. Scott, supra, § 187.6. In *Armington v. Meyer*, 236 A2d 450 (R.I. 1967), the court held that because of a conflict of interest in exercising discretion over payments, the beneficiary-trustees must petition the court to intercede and take over their duties on that issue. The court also stated that if there existed other co-trustees who could exercise this power without conflict the decision could be left to those remaining trustees. Rather

than remove a trustee it has been held proper for a court to choose the alternative measure of substituting its judgment for the trustee's. *Rogers v. Rogers,* 111 N.Y. 228 (18 NE 636) (1888).

In *Griffith,* supra, relied on by CSNB we stated that in discretionary matters "the trial court could have properly substituted its judgment for that of the trustee only if the trustee had exhibited some abuse of discretion such as bad faith or fraud or if the conduct of the trustee is infected with some other abuse of discretion." 249 Ga., supra at 146. This court has held that where discretion is not exercised or not exercised properly a court may interpose itself and exercise the power for the benefit of the beneficiaries, in conformance with the intent of the testator/settlor. *Ansley v. Pace &c.,* 68 Ga. 402 (1882); *Collins v. Collins,* 157 Ga. 85 (121 SE 218) (1924); *Prince v. Barrow,* 120 Ga. 810 (48 SE 412) (1904). "A court will interfere whenever the exercise of discretion by the trustee is infected with fraud or bad faith, misbehavior, or misconduct, arbitrariness, abuse of authority or perversion of the trust, oppression of the beneficiary, or want of ordinary skill or judgment." *C & S Nat. Bank v. Orkin,* 223 Ga. 385, 388 (156 SE2d 86) (1967).

Plaintiffs contend the court went too far in removing the trustee's discretion and substituting its judgment; they contend the proper remedy would be to leave the allocation at $250,000 and remove CSNB as trustee. CSNB contends the court went too far in removing the trustees' discretion and contend the allocation of $250,000 should be reduced or eliminated and plaintiffs should be removed as trustees. Each side has asked the court to intercede, and now that the court has done so, each side complains of the results.

In *Simpson v. Anderson,* 220 Ga. 155, 157 (137 SE2d 638) (1964), this court held to the principle that "the relief granted by a court of equity in dealing with trust estates will always be so moulded and framed as to render the trust effectual and secure the best interest of all parties."

We must now determine if the decree of the court in this case meets this standard. Arthur Haskins named his sons as co-trustees and gave them discretion to allocate income to themselves; as stated earlier, it is presumed he knew of the conflict of interest in this situation and courts are reluctant to remove such trustees. See *Peavy,* supra. As a balance, he named CSNB as a co-trustee who would participate in this discretionary decision. However, the trial court, after listening to the two weeks of testimony before the jury and refusing to overturn its finding of mismanagement and breach of trust also found in the non-jury action that CSNB would never view an allocation as proper. This was viewed as a failure to act or failure to exercise the discretion necessary in order for the trust to operate according to the intent and wishes of Arthur Haskins.

An alternative would have been for the trial court to remove the beneficiary/co-trustees or to remove them from allocation decisions, this latter classification could involve Sidney Haskins as well as plaintiffs, and to remove CSNB because of its failure to cooperate and consider the best interests of all beneficiaries, both income and remaindermen, and its refusal to consider allocation. The court could appoint a new corporate co-trustee and order that any allocation have court approval. This would remove the necessity for the court's restriction on future allocations. We do not find this or other alternatives to be required because the court may take into account the expense and administrative difficulties attendant to that course of action. Such problems may well negatively impact on the best interest of the parties and thereby outweigh any disadvantage of the exercise of judicial direction in the administration of the trust estate. We therefore find no abuse of discretion in the court's order relative to the allocation.

10. We find no error in the court not awarding interest on the trustee fees found due to CSNB. If a breach of trust is found to have occurred, the court may award full compensation, or reduce it to any level including no compensation. Restatement, supra, § 243. The matter is discretionary and we find no abuse of discretion. We also find that while such fees are generally paid from trust income, the superior court is authorized to order them paid out of corpus. *Burney v. Spear*, 17 Ga. 223 (1855); see OCGA § 53-13-52.

11. CSNB contends it should have been awarded attorney fees either from corpus or the plaintiffs to the extent that they ultimately prevailed. While a trustee may be entitled to attorney fees incurred in the protection and preservation of the estate, "he is not entitled to charge the trust estate with fees for defending his own maladministration against the [justifiable] complaint of the beneficiaries." *Melson v. Travis*, 133 Ga. 710, 712 (66 SE 936) (1910). The trial court found the "overriding question" to be the conduct of CSNB in light of the jury verdict and in light of the court's own independent view of the evidence. He concluded there were no frivolous issues raised by plaintiffs and that CSNB should bear its own expenses in defense of the accusations of breach of its fiduciary duties under the facts of this case. We find no error.

12. Plaintiffs contend the trial court was authorized to award attorney fees and expenses to them for their successful effort resulting in a reimbursement to the trust of $28,167 and an allocation of income to all beneficiaries. This claim is for an award in addition to the $10,000 attorney fees provided in the jury verdict. While an award may be authorized, we do not agree that the failure to award them in this case was an abuse of discretion and therefore this enumeration is without merit.

*Judgment affirmed. All the Justices concur.*

DECIDED MARCH 14, 1985 —
REHEARING DENIED MARCH 28, 1985.

*Sell & Melton, Ed S. Sell III, John D. Comer,* for appellant (case nos. 41195 and 41196).
*Groover & Childs, Frank H. Childs, Jr.,* for appellant (case no. 41197).
*Stone, Wingate, Christian & Peterman, Kice H. Stone, Martha C. Christian,* for appellees.