A96A0820. GAMMAGE v. GRAHAM.
(471 SE2d 237)

JOHNSON, Judge.

On December 12, 1991, attorney Miles Gammage was appointed to defend eighteen-year-old Mark Eric Graham against charges of child molestation and attempted statutory rape of a ten-year-old girl. Graham had been confined since his arrest on July 17, 1991, and had already given and signed an incriminating statement at the time of Gammage's appointment. On Graham's behalf, Gammage waived formal arraignment on December 18, 1991. He interviewed the investigator who took Graham's statement and shortly thereafter wrote a letter to Graham in which he suggested that entering a guilty plea might be advisable in light of Graham's written confession. Gammage met with Graham for an hour-long interview on February 4,

1992. At the beginning of the meeting, Graham laid on the floor and appeared lethargic. However, he eventually got up and sat in a chair and discussed the case with Gammage, acknowledging that he had committed the acts alleged and admitting that he understood that they were wrong. As a result of this meeting, Gammage petitioned the court for a psychiatric evaluation, which was ordered. During a telephone conference several days after this meeting, Graham told Gammage that he wanted to plead guilty to the charges.

The evaluation was performed in February 1992, and concluded that Graham, who had a history of mental illness and whose intelligence had been characterized as "borderline normal," was competent to stand trial, and understood the charges against him and the possible consequences should he be found guilty. Gammage negotiated a plea of guilty but mentally ill with the prosecutor. He explained the plea and its consequences to Graham. On April 7, 1992, in open court, Graham entered a guilty plea. The trial judge questioned Graham about his understanding of the proceedings and confirmed that it was his desire to plead guilty. The trial judge, sua sponte, questioned counsel extensively about the mental health evaluation and about a previous report concerning Graham's competency which had been submitted to the court. The judge accepted Graham's plea of guilty but mentally ill and sentenced him to a term of five years in confinement followed by ten years on probation on each count to be served concurrently and remanded him into the custody of the Department of Corrections for mental assessment and assignment pursuant to OCGA § 17-7-131 (g). Graham was sent to Lee Arrendale Correctional Institution, a prison facility for youthful offenders, and classified as a youthful inmate in need of mental health care.

On August 31, 1992, Graham opened his cell door, which had a defective lock, and invited Timothy Gaydon, a fellow inmate, into his cell. Graham began telling Gaydon about the child molestation incidents leading to his incarceration. Gaydon, who was particularly sensitive to this type of crime because of events which had happened to his sisters, became enraged. Gaydon later admitted to beating Graham to death.

Lydia Graham, individually, and by amendment as the temporary representative of the estate of her son, brought this action against Gammage alleging fraud, negligence, breach of fiduciary duty, legal malpractice, and breach of contract resulting in the wrongful death of Graham.[1] We granted Gammage's application for interlocutory review of the trial court's denial of his motion for sum-

---

[1] Another suit, filed against various other defendants in federal court, has apparently been resolved.

mary judgment.

1. "This court considers de novo the entire record before it on review of denial of a motion for summary judgment in order to determine if there were genuine issues of material fact which would preclude summary judgment or whether, instead, any such disputes were immaterial and movant [Gammage] was entitled to summary judgment as a matter of law. [Cit.]" *Cambridge Mut. Ins. Co. v. Okonkwo*, 218 Ga. App. 59, 61 (1) (460 SE2d 302) (1995).

2. "Under the law of this state an unforeseeable independent, intervening criminal act of a third person which produced the injury complained of, and without which act the injury would not have occurred, is treated as the proximate cause of the injury, and the independent, intervening criminal act of the third person shall insulate and exclude any negligence on the part of the defendant. [Cits.]" *Simmons v. Dept. of Human Resources*, 213 Ga. App. 98 (1), 99 (443 SE2d 654) (1994). In this case, as in *Simmons*, Graham's death was caused by the criminal acts of someone with whom he voluntarily elected to associate, and who later murdered him. Even if we acknowledge that violence occurs in prisons, the particular chain of events resulting in Graham's murder were not foreseeable to Gammage, were not triggered by him, and were sufficient in themselves to cause the injury forming the basis of this action. See *Jones v. Central of Ga. R. Co.*, 192 Ga. App. 806, 807 (386 SE2d 386) (1989). The circumstances of Graham's murder were not of a type of substantially similar incidents of violence in prisons which would render them foreseeable to Gammage. See *Savannah College of Art &c. v. Roe*, 261 Ga. 764 (409 SE2d 848) (1991); *Adler's Package Shop v. Parker*, 190 Ga. App. 68, 70 (378 SE2d 323) (1989). Neither did Gammage own, have access to, or control over, conditions in the prison, such that he could have taken any remedial or preventative measures to protect Graham. See generally *Daniel v. Ga. Power Co.*, 146 Ga. App. 596, 600 (5) (247 SE2d 139) (1978).

Generally, issues of negligence and proximate cause are matters for the jury. *Flanagan v. Riverside Military Academy*, 218 Ga. App. 123, 124 (460 SE2d 824) (1995); *Wallace v. Boys Club of Albany &c.*, 211 Ga. App. 534 (439 SE2d 746) (1993); *Taylor v. McClendon*, 205 Ga. App. 390 (2) (422 SE2d 440) (1992). However, in clear and palpable cases, the issue of proximate cause is properly decided as a matter of law. *Atlanta Gas Light Co. v. Gresham*, 260 Ga. 391, 393 (4) (394 SE2d 345) (1990). Pretermitting whether Gammage's representation was negligent in any particular, a proposition not supported by the record in this case in any event, "[n]o matter how negligent a party may be, if [his] act stands in no causal relation to the injury it is not actionable." (Citations and punctuation omitted.) *Fin-*

*ney v. Machiz*, 218 Ga. App. 771, 773 (463 SE2d 60) (1995).[2] The evidence establishes as a matter of law that the sole proximate cause of Graham's death was the intervening criminal act of Timothy Gaydon, which was not foreseeable or avoidable by Gammage. Because Gammage's conduct did not proximately cause Graham's death, the trial court erred in denying Gammage's motion for summary judgment. See *Simmons*, supra; *Gafford v. Duncan*, 210 Ga. App. 350 (436 SE2d 78) (1993).

*Judgment reversed. McMurray, P. J., and Ruffin, J., concur and concur specially.*

RUFFIN, Judge, concurring specially.

I concur fully with the majority opinion in this case. The tragedy in this case, in addition to the tragedy of the death of Mark Eric Graham, is that an attorney had to undergo the ordeal of legal proceedings that had absolutely nothing to do with his representation of the deceased.

I am authorized to state that Presiding Judge McMurray joins in this special concurrence.

DECIDED MAY 1, 1996 —
RECONSIDERATION DENIED MAY 13, 1996 — 

*Drew, Eckl & Farnham, Arthur H. Glaser, Mary H. Hines*, for appellant.

*James C. Carr, Jr., William W. Barham*, for appellee.

---

[2] There is nothing in the record to suggest that Graham, or his mother, attempted to withdraw his plea based on an assertion of ineffective assistance of counsel, or that ineffective assistance of counsel was raised in habeas corpus proceedings.