## A02A1853. GRIFFIN v. FOWLER et al.
(579 SE2d 848)

MIKELL, Judge.

Morris J. Griffin filed the underlying action asserting claims of legal malpractice, breach of fiduciary duty, and fraud against Michael C. Fowler, arising out of estate planning services performed by Fowler on Griffin's behalf. Griffin also sued the individual partners in Fowler's law firm, Bivens, Hoffman & Fowler, LLP, and the firm itself. The trial court granted partial summary judgment to the defendants on Griffin's claims of breach of fiduciary duty and fraud,

---

leaving the legal malpractice claim to be decided by a jury.[1] Griffin appeals. For reasons explained below, we affirm.

> To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the non-moving party, warrant judgment as a matter of law. OCGA § 9-11-56 (c). A *defendant* may do this by showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of [the] plaintiff's case. . . . Our review of an appeal from summary judgment is de novo.

(Citations omitted.) *Vasquez v. Smith*, 259 Ga. App. 79 (576 SE2d 59) (2003). See also *Willett v. Russell M. Stookey, P.C.*, 256 Ga. App. 403, 410 (568 SE2d 520) (2002).

Viewed in favor of Griffin as the nonmoving party, the record shows that he was the primary beneficiary of the substantial estate of his former life partner, William Kerske. Griffin met Fowler when Quinton Hudson, an attorney and longtime acquaintance of both men, referred him to Fowler for estate planning services. Hudson had performed general legal work for Griffin for over 25 years. Additionally, Griffin shared a social relationship with Hudson and with Hudson's life partner, James Richardi, with whom Hudson resided.

There is evidence that beginning as early as 1993, Fowler performed estate planning work for Griffin, including preparing a revocable living trust and other related documents to assist him in managing the bequest from Kerske. In January 1998, Griffin formally retained Fowler to assist him in establishing an estate plan. Griffin signed a retainer agreement and paid Fowler $50,000 for his services. According to Fowler, Griffin's estate planning goals were to establish a plan for an orderly transfer of his assets after his death, to insulate his assets from creditors, and to make certain charitable contributions. Griffin deposed that he also expressed his concerns regarding

---

[1] The trial court denied the defendant law partners' motion for summary judgment on the issue of their liability for Fowler's conduct. The defendant partners argued that because the firm became a limited liability partnership on December 30, 1997, they could not be held individually liable for Fowler's acts or omissions. OCGA § 14-8-15 (b). The trial court found evidence that Fowler performed legal services on Griffin's behalf prior to December 1997, and, therefore, that the defendant partners could not escape potential liability. The court also denied the defendants' motion for summary judgment on Griffin's claim that Fowler and his partners were jointly and severally liable for damages awarded in a prior lawsuit and on his claim for punitive damages and/or attorney fees. These rulings have not been challenged in the present appeal.

his ability to effectively manage such a large amount of money, based on his spending habits and past cocaine abuse. Additionally, Griffin, who is HIV positive, wanted to ensure that he would have sufficient funds to cover future medical expenses. In 1998, Griffin received a distribution of approximately $1.4 million from the corpus of the Kerske Estate Trust.

In order to effectuate Griffin's goals for managing the distribution, Fowler utilized several legal devices. He set up a charitable remainder unitrust and the M. J. Griffin Living Trust, and established a limited partnership that would own and operate Griffin's business, providing protection from creditors and allowing Griffin to minimize estate taxes and provide for the transfer of his assets after his death. Fowler also filed incorporation documents for the corporation that served as the general partner of the limited partnership. At Hudson's suggestion, Richardi was named the trustee of both trusts and received commissions for his services based on a fee agreement.

In the eight months following the appointment of Richardi as trustee, Griffin authorized a number of disbursements from the living trust, including a $370,000 loan to Hudson to enable him to purchase a home. There is nothing in the record indicating that Fowler was aware of the loan to Hudson or the other disbursements authorized by Griffin and Richardi. In September 1998, Griffin discovered an unauthorized $5,000 withdrawal from his account by Hudson. Griffin fired Hudson and had Richardi removed as trustee. Griffin filed a lawsuit against Hudson and Richardi on October 6, 1998. A panel of arbitrators awarded Griffin $1,338,803, and the award was made the judgment of the court. Griffin filed the present suit against Fowler and his law firm on January 11, 2000.

1. First, Griffin argues that the trial court erred in granting summary judgment to Fowler and his law partners on the breach of fiduciary duty claim. It is well settled that a claim for breach of fiduciary duty requires proof of three elements: (1) the existence of a fiduciary duty; (2) breach of that duty; and (3) damage proximately caused by the breach. *Conner v. Hart*, 252 Ga. App. 92, 94 (1) (a) (555 SE2d 783) (2001). See also *Willett*, supra at 411-412 (7); *Tante v. Herring*, 264 Ga. 694 (1) (453 SE2d 686) (1994) (attorney breached fiduciary duty by using information gained through the attorney-client relationship to engage in an adulterous relationship with client). It is undisputed that Fowler owed Griffin a fiduciary duty as his attorney. Griffin contends that there were issues of fact regarding whether Fowler breached his fiduciary duty by charging a grossly excessive fee, charging Griffin for estate planning software that he retained for general use in his practice, and failing to inform Griffin that he had concerns about Richardi serving as the trustee of Griffin's trusts. We disagree.

We held in *McMann v. Mockler*, 233 Ga. App. 279 (503 SE2d 894) (1998), that a plaintiff's breach of fiduciary duty claim, as well as claims of breach of contract and breach of implied duty of good faith and fair dealing, merely duplicated her malpractice claim and could not survive summary judgment. Id. at 282 (3). We affirmed the trial court's ruling that "the claims were 'mere duplications of the legal malpractice claim which itself is based on the establishment of a fiduciary, attorney-client relationship that is breached.'" Id. at 281 (3). We reach a similar result in the case at bar. Our review of the complaint reveals that Griffin's allegations of excessive fees, improper charges for software, and Fowler's failure to warn him of concerns regarding Richardi serving as trustee are all contained in the malpractice claim. Accordingly, Griffin's breach of fiduciary duty claim is a mere duplication of the malpractice claim and cannot be maintained. Furthermore, even if Griffin's allegations were not duplicative, they would not have survived summary judgment for the reasons that follow.

(a) *Excessive fees.* Our Supreme Court has held that a plaintiff's allegation that he was charged excessive legal fees cannot provide the sole basis for a malpractice claim. *Davis v. Findley*, 262 Ga. 612, 613 (422 SE2d 859) (1992). The Supreme Court recognized that prohibitions of clearly excessive legal fees are contained in the Georgia Code of Professional Conduct and the State Bar Rules. Id. at 612. Citing decisions of this Court and of other jurisdictions, the Supreme Court held that a plaintiff cannot base a claim for civil damages solely on duties imposed by the Code of Professional Conduct. Id. at 612-613.

In the case at bar, Griffin contends that the $50,000 fee charged by Fowler was clearly excessive, particularly in light of the fact that Hudson also charged him $50,000. He supports this allegation with expert testimony. However, the record also shows that Griffin voluntarily entered into the retainer agreement and paid Fowler the agreed-upon fees. In light of the Supreme Court's decision in *Davis*, supra, and based on the evidence in the record, the trial court did not err in granting summary judgment to the defendants on this claim.

Griffin cites *Watkins & Watkins, P.C. v. Williams*, 238 Ga. App. 646 (518 SE2d 704) (1999), and *Allen v. Lefkoff, Duncan, Grimes & Dermer, P.C.*, 265 Ga. 374 (453 SE2d 719) (1995), in support of his argument; however, such reliance is misplaced. In *Watkins*, a client sued her former attorney for professional negligence, fraud, and breach of fiduciary duty. *Watkins & Watkins*, supra at 648 (2). Evidence was presented that the lawyer charged extremely high fees, solicited loans from his client, and kept money that he should have forwarded to her. Id. at 647. We held that the trial court did not err in allowing evidence of the Code of Professional Responsibility, because

"Rules of the State Bar . . . may be considered along with other facts and circumstances to determine whether an attorney treated his client with the requisite degree of skill and care." (Citation omitted.) Id. at 647-648 (2). We reasoned that "[i]n the context presented here, each of [the plaintiff's] claims is part of a legal malpractice claim." Id. at 648. There is no indication in *Watkins & Watkins* that the defendant moved for summary judgment on the ground that the excessive fee allegation was improper or that the plaintiff attempted to base a claim for breach of fiduciary duty solely on that allegation. At most, *Watkins & Watkins* provides that evidence of excessive fees can be considered as part of a legal malpractice claim. In the case sub judice, rather than considering all of Griffin's claims to be part of one legal malpractice claim, the trial court granted summary judgment on the claims that were mere duplications. Griffin retains his legal malpractice claim, and the trial court may determine that evidence of certain bar rules may be presented in connection with that claim. However, Griffin's allegation that he was charged excessive fees cannot form the basis for his breach of fiduciary duty claim.

Similarly, *Allen*, supra, does not require a different result. At issue in *Allen* was the trial court's disallowance of any evidence that the defendants violated the Code of Professional Responsibility. Id. The Supreme Court cited *Davis*, supra, with approval and recognized that "the duties imposed by the Bar Rules cannot provide the *sole* basis for the standard of care applied in a legal malpractice action." *Allen*, supra at 374 (1). The Court went on to hold that in regard to the "ordinary care, skill and diligence" element of a legal malpractice action, ethical standards are admissible as some evidence of this standard of care. Id. at 375 (2). *Allen* does not hold that a claim for civil damages can be premised solely on allegations of excessive fees.

(b) *Purchase of software.* Next, the trial court properly concluded that evidence of Fowler charging Griffin for the purchase of software did not support a claim for breach of fiduciary duty. The record shows that in the course of his representation of Griffin, Fowler purchased estate planning software that he testified was necessary to make certain calculations in connection with the charitable remainder unitrust. He charged Griffin for the software and then retained it for use in his practice. He further testified that he had not needed the software until he began his representation of Griffin. Griffin's expert witness testified that the calculations could have been made without the software by using published Internal Revenue Service tables. Griffin argues that Fowler's fiduciary duty prevented him from charging Griffin for "office supplies" and that Fowler took unfair advantage of Griffin. What Griffin ignores is that the retainer agreement he signed expressly provides that he may be charged for out-of-

pocket costs required to implement the estate plan, including "software acquisition."

Moreover, Griffin's argument that he was overcharged essentially amounts to an allegation of excessive fees, which, based on *Davis*, supra, cannot solely form the basis of a breach of fiduciary duty claim. Accordingly, the trial court did not err in entering summary judgment on this claim.

(c) *Duty to warn.* Likewise, the trial court did not err in rejecting Griffin's breach of fiduciary duty claim based on his allegation that Fowler failed to warn him of concerns about the appointment of Richardi as trustee. Griffin is correct that generally the confidential relationship between a lawyer and client heightens the lawyer's obligation "to reveal what ought to be revealed." *Hunter, Maclean, Exley & Dunn, P.C. v. Frame*, 269 Ga. 844, 850 (2) (507 SE2d 411) (1998). However, in this case, there is no evidence in the record demonstrating Fowler's awareness of any facts that would lead him to conclude that Richardi was untrustworthy. Significantly, Griffin and Hudson determined that Richardi should be appointed as the trustee. As we noted above, Griffin was a longtime acquaintance of Richardi, and he deposed that he did not recall whether he expressed any doubts about Richardi's trustworthiness to Fowler. Fowler testified that he knew Richardi "had a very responsible job" and "was an intelligent fellow." According to Fowler, he had always known Hudson to be a competent attorney and a trustworthy person, and his knowledge of Richardi was largely based on Hudson's representations.

Fowler deposed that Hudson, acting as Griffin's general counsel, actually dictated the trustee fee agreement. Fowler expressed concern to Hudson about the use of multiple trusts and the fact that Richardi might have the opportunity to generate commissions by cascading money through the two trusts. However, Fowler testified that such concern would arise any time one trustee was appointed for multiple trusts and that his concerns were not specific to Richardi. Significantly, Griffin has never alleged that Richardi abused the fee agreement by unnecessarily directing funds between the accounts; therefore, Fowler's general concerns were never realized. In fact, Griffin authorized the numerous trust disbursements and voluntarily loaned funds to Hudson without Fowler's knowledge. There is simply nothing in the record to support Griffin's argument that Fowler somehow should have foreseen that Richardi might be an unfit trustee. Thus, we cannot hold Fowler liable for Richardi's intervening act of making an unauthorized withdrawal from Griffin's trust. See *Gammage v. Graham*, 221 Ga. App. 383, 385 (2) (471 SE2d 237) (1996); *Garcia v. Unique Realty &c. Co.*, 205 Ga. App. 876, 878 (2) (424 SE2d 14) (1992). The trial court properly granted summary judgment on this claim.

Griffin cites *Williamson v. Abellera*, 245 Ga. App. 312 (537 SE2d 130) (2000), aff'd in part and rev'd in part on other grounds, *Abellera v. Williamson*, 274 Ga. 324 (553 SE2d 806) (2001), for his argument that Fowler should have investigated Richardi before allowing him to serve as the trustee; however, that case is distinguishable from the case at bar. In *Williamson*, the defendant attorney deposited $209,010 of his client's money with a previously unknown "Exchange Facilitator" in the course of a real estate transaction. Id. at 312. The "Exchange Facilitator" stole the money and fled the country. Id. at 313. In that case, the defendant attorney recommended the facilitator to the client despite the fact that he had no knowledge of or prior dealings with the facilitator and learned of the facilitator through a brochure. Id. This Court held that the facilitator's conduct was a foreseeable consequence of the attorney advising his client to use that particular company to hold the money without attempting to "ascertain or verify the identity, credentials, or trustworthiness of" the company. Id. at 314-315. In the case sub judice, it was Griffin and his long-term attorney, Hudson, who recommended that Richardi be appointed trustee. Unlike the plaintiff in *Williamson*, Griffin had significant prior contact with Richardi, and Fowler asked Hudson about Richardi's trustworthiness.

2. Finally, Griffin argues that the trial court erred in granting summary judgment to the defendants on the fraud claim based on its finding that even if Fowler's estate planning advice to Griffin was deficient, there was no evidence that Fowler lacked the necessary expertise in estate planning or that he misrepresented his experience or expertise. See *Johnson v. Rodier*, 242 Ga. App. 496, 498 (529 SE2d 442) (2000) (false representation by a defendant is one of the elements of fraud). We disagree and affirm the judgment of the trial court on this claim.

According to Griffin, Fowler held himself out as a lawyer with the experience and knowledge necessary to advise Griffin about sophisticated estate planning matters, and he relied on these representations when he decided to retain Fowler. Contrary to Griffin's allegation that Fowler lacked the necessary legal knowledge to competently handle the estate planning matters at issue, it is undisputed that Fowler had practiced law in the area of estate planning for over ten years, that he was a founding member of the National Network of Estate Planning Attorneys, and that, at the time of his deposition, he served as the Estate Planning Director for the southeast division of Solomon Smith Barney. Given this background, there is no evidence to support Griffin's claim that Fowler defrauded him when he represented that he had the expertise and experience to handle Griffin's estate planning matters. In the absence of false or grossly misleading statements which evidence an intent to create a false impression of

expertise or experience, it is not fraud for an attorney to convey to a potential client a healthy self-estimation of ability. See *Baker v. Dorfman*, 239 F3d 415, 422-424 (2nd Cir. 2000). To hold otherwise would invite a fraud claim based on misrepresentation of ability in virtually every legal malpractice claim.

Moreover, the damages flowing from Griffin's separate claim that Fowler fraudulently misrepresented his expertise or experience to induce employment are no different from the damages flowing from the alleged legal malpractice. Therefore, even if there had been evidence to support the allegation of fraud, there would have been no separate cause of action for fraud apart from the malpractice claim, but simply a claim for the award of punitive damages based on fraud as an aggravating circumstance in the malpractice claim. OCGA § 51-12-5.1.

Accordingly, the trial court correctly granted summary judgment on Griffin's fraud claim because, not only was there no basis for a separate cause of action for fraud, there was no evidence to support the award of punitive damages based on fraud.

*Judgment affirmed. Andrews, P. J., and Phipps, J., concur.*

DECIDED MARCH 20, 2003 —

*James W. Ott*, for appellant.

*Hawkins & Parnell, Christine L. Mast, Emory L. Palmer, David E. Allman*, for appellees.