A04A2113, A04A2114. SUNTRUST BANK v. MERRITT et al.; and vice versa.
(612 SE2d 818)

RUFFIN, Chief Judge.

The critical issue in these appeals involves the duty owed by a trustee to remainder beneficiaries. William Merritt, Jr., Martha Merritt, and Anne Merritt Stembler (collectively, "the Merritts"), remainder beneficiaries of a trust, filed suit against SunTrust Bank f/k/a Trust Company of Georgia ("SunTrust"), one of two trustees, alleging inter alia that it breached its fiduciary duty by favoring the interest of the income beneficiary over that of the remainder beneficiaries.[1] The Merritts sought compensatory damages, punitive damages, and attorney fees.

---

[1] The Merritts also filed suit against the estate of their father, who was the income beneficiary and second trustee. It appears the estate did not move for summary judgment and thus is not included on appeal.

The Merritts moved for partial summary judgment on the issue of liability, and SunTrust moved for summary judgment on all counts. The trial court granted SunTrust's motion in part and denied it in part, and the court denied the Merritts' motion. In Case No. A04A2113, SunTrust appeals, and in Case No. A04A2114, the Merritts appeal. As both cases involve the same operative facts, we have consolidated them on appeal. For reasons that follow, we reverse the trial court's ruling in Case No. A04A2113, and we affirm in Case No. A04A2114.

To prevail on a motion for summary judgment, the movant must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in a light most favorable to the nonmovant, warrant judgment as a matter of law.[2] We review a trial court's ruling on motion for summary judgment de novo.[3]

Viewed in this manner, the record shows that Martha Bradford Hynds had two daughters and one son, William Merritt, Sr. ("William Merritt"). Hynds died testate, leaving the bulk of her estate to be equally divided among three trusts. Each trust provided income for life to one of her children with the remainder passing on to the next generation. The child who was the lifetime beneficiary of the trust served as a co-trustee with SunTrust as a second, corporate trustee.[4] Thus William Merritt was one of the trustees for the trust of which he was the income beneficiary ("the Merritt Trust").

With respect to the Merritt Trust, the will provided, in pertinent part, that the trustees

> shall pay the entire net income from the property in their hands over to [William Merritt], from the time of my death until his death. If at any time [William Merritt] is in actual need of support and has no other adequate means of support, including the income from this trust and any other means of support, then the Trustees shall be authorized to encroach on the corpus of the property in such amounts as in the judgment of the corporate Trustee is absolutely necessary to provide for his actual and essential support. I do not intend that the Trustees encroach on the corpus in order to provide a standard of living equal to that to which he may have been accustomed, but I intend the power of encroachment to be exercised only in case of absolute necessity. The judgment of the corporate Trustee shall be final and conclusive.

---

[2] See *Griffin v. Fowler*, 260 Ga. App. 443, 444 (579 SE2d 848) (2003).

[3] See id.

[4] The corporate trustee was actually listed as Trust Company of Georgia, a predecessor of SunTrust. For ease of reading, we refer simply to SunTrust.

> On the death of [William Merritt], the property remaining in the hands of the Trustee shall be distributed per stirpes among his descendants then living.

According to Benjamin Harris, one of the SunTrust employees who served as trust officer, the objective of the Merritt Trust was to maximize tax-free income. Apparently, William Merritt sought to keep the trust's corpus invested in tax-free assets. Although Harris broached the subject of diversifying the trust portfolio to include stocks, William Merritt was reluctant to invest in such higher risk investments.[5]

The Merritt Trust was originally funded with approximately $675,000, which was the same funding amount for the other two sister trusts. Upon William Merritt's death in 2000, the trust was worth approximately $732,000. According to the Merritts, this growth failed to keep pace with inflation. However, the sister trusts, which had been invested almost exclusively in stocks, had more than trebled in value.

Upon learning that the Merritt Trust had appreciated only negligibly, the Merritts filed suit against SunTrust, asserting that it breached its fiduciary duty by failing to balance the interests of William Merritt as income beneficiary against the interests of the remainder beneficiaries. According to the Merritts, by investing primarily in nongrowth assets, SunTrust failed to adhere to the "prudent person standard" of investing. As a result of the alleged breach of fiduciary duty, the Merritts sought compensatory damages, punitive damages, and attorney fees.

After the parties filed cross-motions for summary judgment, the trial court found, in relevant part, that: (1) SunTrust did not violate any duty imposed under the trust; (2) SunTrust did not violate the "prudent investor rule" by relying solely on the factors set forth in OCGA § 53-12-287; and (3) the interests of the remainder beneficiaries were secondary to those of the income beneficiary. Thus, the trial court ruled in SunTrust's favor on these issues. However, the trial court found that an issue of fact remained as to whether SunTrust violated a fiduciary duty by failing to keep up with inflation and

---

[5] The Merritts challenge the timing of SunTrust's decision to invest in tax-free bonds, arguing that any such decision was made before the trust was funded and before William Merritt accepted his duties as co-trustee. However, as William Merritt was a beneficiary of the nascent trust, we fail to see the impropriety of a SunTrust trust officer taking William Merritt's request into consideration. The Merritts also assert that there is no evidence that SunTrust " 'routinely suggested changes to the investment mix.' " Again, however, there is evidence that some discussion was had with Merritt regarding the allocation of the trust's assets and that Merritt preferred low-risk investments that yielded high, tax-free, income.

preserve the "real value" of the principal. Thus, the trial court denied SunTrust's motion in this regard, and it denied the Merritts' cross-motion.

Based on the possible breach of fiduciary duty, the trial court reserved ruling on SunTrust's motion for summary judgment as to punitive damages and attorney fees. SunTrust then moved for a pretrial ruling on these issues, asserting that under the trial court's prior order, SunTrust could not be found to have acted wilfully or recklessly. The trial court disagreed, and denied this motion.

*Case No. A04A2114*[6]

1. In multiple enumerations of error, the Merritts argue that the trial court erred in concluding, as a matter of law, that the income beneficiary's interest prevailed over that of the remainder beneficiaries and that SunTrust did not violate any duty imposed under the trust.[7] Specifically, the Merritts argue that SunTrust violated its fiduciary duty by failing to act in an impartial, loyal manner and by failing to prudently invest and grow the corpus of the trust. We disagree.

The cardinal rule in construing a trust instrument involves discerning "the intent of the settlor and [effectuating] that intent within the language used and within what the law will permit."[8] In the instant case, the grantor expressly provided that "the entire net income" of the trust was payable to William Merritt, while he lived. Given the unqualified, unambiguous language entitling William Merritt to the income, we fail to see how SunTrust can be liable for breaching a fiduciary duty by permitting William Merritt to maximize this income.[9]

" 'A breach of trust is a violation by the trustee of any duty which as trustee he owes to the beneficiary.' "[10] Here, SunTrust owed separate duties to the different beneficiaries.[11] As our Supreme Court has noted,

---

[6] For the sake of clarity, we address the appeals in reverse order.

[7] The Merritts also contend that "[t]he trial court erred in concluding, as a matter of law, that Plaintiffs were not entitled to punitive damages in this case." For ease of reading, we address this argument in Division 3.

[8] *Miller v. Walker*, 270 Ga. 811, 815 (514 SE2d 22) (1999).

[9] See *Perling v. C & S Nat. Bank*, 250 Ga. 674, 678 (2) (300 SE2d 649) (1983) (where express language of trust unambiguously relieved the trustees of duty to act prudently, courts will enforce the trust as written).

[10] *C & S Nat. Bank v. Haskins*, 254 Ga. 131, 134 (1) (327 SE2d 192) (1985).

[11] See id. at 140 (9).

[i]n trusts like the present one with successive beneficiaries, that is income to a beneficiary for life and the principal later to other beneficiaries, the interests of the two beneficiaries are to a certain extent antagonistic, and the trustee is under a duty so to administer the trust as to preserve a fair balance between them.[12]

In determining what is fair, we look to the trust instrument.[13] Again, the instrument at issue makes clear that William Merritt is entitled to the income and the Merritts, as remainder beneficiaries, are entitled to the corpus. Under these circumstances, the duty owed to the remainder beneficiaries is to preserve and protect — not increase — the corpus of the trust.[14] It follows that SunTrust cannot be held liable for breaching a fiduciary duty by investing the trust in such manner as to maximize the income payable to William Merritt rather than expand the corpus of the trust.

### Case No. A04A2113

2. On appeal, SunTrust argues that the trial court erred in creating a duty flowing from it, as trustee, to the remainder beneficiaries to meet or exceed inflation with regard to the corpus of the trust. We agree.

The trial court essentially found that an issue of fact exists as to whether SunTrust protected and preserved the corpus of the trust because, although the actual dollar value of the trust increased, the "real value" did not because growth did not keep pace with inflation. The trial court relied, in part, on *Sims v. Heath*,[15] a case in which the time value of money was considered as a measure of damages. However, the fact that the time value of money may be a consideration does not mean that it is dispositive. Establishing "a claim for breach of fiduciary duty requires proof of three elements: (1) the existence of a fiduciary duty; (2) breach of that duty; and (3) damage proximately caused by the breach."[16] Here, the primary issue is whether failure to keep up with inflation constitutes a breach of fiduciary duty.

---

[12] (Punctuation omitted.) Id.

[13] See id.

[14] See Restatement of Trusts, 3d, pp. 181-182, § 232, comment c ("The trustee is also under a duty to the remainder beneficiaries to exercise reasonable care in an effort to preserve the trust property, and this duty ordinarily includes a goal of protecting the property's purchasing power. . . . The terms of a trust, as expressed or interpreted, may influence the balancing of competing interests and affect a particular trustee's duty of impartiality.").

[15] 258 Ga. App. 681, 683 (3) (577 SE2d 789) (2002).

[16] *Griffin*, supra at 445 (1).

Although this appears to be an issue of first impression in Georgia, this exact argument has been raised and rejected in at least two other jurisdictions.[17] As an Arizona appeals court noted under virtually identical facts,

> because this trust [provided a beneficiary] a lifetime income, the trustees could not sacrifice income in order to increase the value of the principal. [Cit.] The trustees' duty was to invest in such a manner as to produce an income for [the lifetime beneficiary] and, secondarily [to] preserve the principal.[18]

Thus, the Arizona court declined to impose a duty on trustees to invest with the intent to protect against inflation. Rather, the trustee served the primary purpose of the trust by investing with an eye toward producing income and, secondarily, preserving the principal.

We find this reasoning persuasive here. It is undisputed that the corpus of the trust was not encroached upon and actually increased in value, although not to the extent desired by the remainder beneficiaries. Moreover, the corpus was invested in a manner consistent with the intent of the trust's settlor, which was to provide income to the lifetime beneficiary. Under these circumstances, the trial court erred in concluding that an issue of fact exists as to whether SunTrust breached its fiduciary duty by failing to keep pace with inflation.

3. SunTrust also maintains that the trial court erred in finding that punitive damages and attorney fees may be recovered. Absent a viable claim for breach of fiduciary duty, an award of punitive damages and attorney fees cannot stand.[19] In view of our ruling in Divisions 1 and 2, the Merritts have no viable breach of fiduciary duty claim against SunTrust and thus are not entitled to either punitive damages or attorney fees.

*Judgment reversed in Case No. A04A2113. Judgment affirmed in Case No. A04A2114. Adams and Bernes, JJ., concur.*

DECIDED MARCH 25, 2005 — 

*Jones Day, Ralph R. Morrison, Gregory R. Hanthorn, Jordana R. Sternberg*, for appellant.

---

[17] See *In re Trust Created by Martin*, 664 NW2d 923 (Neb. 2003); *Tovrea v. Nolan*, 875 P2d 144 (Ariz. App. 1993).

[18] *Tovrea*, supra at 149.

[19] See *Kilburn v. Patrick*, 241 Ga. App. 214, 218 (2) (525 SE2d 108) (1999).

*Frankel & Associates, Craig M. Frankel, Tamisa N. Wertz, Lawler, Tanner, Zitron & Pachman, Jeffrey M. Zitron, Doffermyre, Shields, Canfield, Knowles & Devine, Everette Doffermyre, Jr.*, for appellees.